COMMONWEALTH *vs.* FRANCIS G. MONTMENY.

Hampden.  October 5, 1971. — December 6, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Evidence,* Opinion: expert.  *Robbery.  Accessory and Principal.  Words,*
"Molested."

At the trial of an indictment for rape, a question by the prosecutor
    whether what a doctor had seen in his examination of the alleged
    victim was "consistent with" a history that he had obtained from
    her was not improper. [527–529]
From testimony by a doctor in a rape case that from what he had seen
    in an examination of the alleged victim it "certainly . . . [appeared]
    as though the girl had been molested," the jury in the circum-
    stances should have inferred no more than that the doctor was of
    opinion that what he had seen was consistent with sexual
    intercourse. [529–530]
Evidence at the trial of an indictment for robbery of one of two girls,
    that the defendant and a companion asked that girl whether she
    had any money, that the companion reached into that girl's
    pocketbook and took her money, that the defendant took money
    from the wallet of the other girl, and that the defendant had said
    that he and his companion "wanted . . . [the girls'] money"
    warranted a finding that the defendant was present as a principal,
    aiding and abetting a robbery of both girls, and there was no error
    in refusing to direct a verdict for him. [530]

INDICTMENTS found and returned in the Superior Court
on September 28, 1970.

The cases were tried before *Linscott, J.*

The cases were submitted on briefs.

*Reuben Goodman & Alexander Whiteside, II,* for the
defendant.

*Matthew J. Ryan, Jr.,* District Attorney, *& Leonard E.
Gibbons,* Assistant District Attorney, for the Common-
wealth.

HENNESSEY, J.  The defendant was tried before a jury
on indictments charging him with kidnapping, armed rob-
bery and rape concerning one girl (the first girl), and with
the kidnapping, armed robbery and rape of another girl

(the second girl). He was found guilty on all indictments except those for armed robbery, and as to those indictments he was found guilty of unarmed robbery. His appeals are here under G. L. c. 278, §§ 33A–33G.

Two assignments of error are argued: (1) the admission in evidence of an opinion of one Dr. Thomas O'Neil, which the defendant argues was the expression of an opinion as to the ultimate issue for the jury on the rape indictment concerning the first girl, and (2) the denial of the defendant's motion for a directed verdict as to the indictment charging armed robbery of the first girl.

There was testimony from the two girls that Montmeny had forced them into an automobile driven by another man and that Montmeny forced the second girl to have sexual relations with him during the ensuing automobile ride. The car was driven to a dirt road in a wooded area, and there both girls were forced by Montmeny to have sexual relations with him. The other man also forced both girls to have sexual relations with him.

1. Assignment 1 asserts that it was error for the trial judge, over the objection and exception of the defendant, to permit Dr. O'Neil to answer a certain question on direct examination by the district attorney: whether what the doctor had seen in his examination of the first girl was consistent with the history that he had obtained from the girl.[1]

The defence argues that this question should have been excluded as calling for an opinion which was directed toward the ultimate issue before the jury. However, this court has held that a question which calls for an opinion which is in the domain of the expert's professional knowledge is not

---

[1] The question and answer and the context in which they appeared were as follows: Q. "And Doctor, at the conclusion of your examination, did you form an opinion based upon a reasonable degree of medical certainty as to whether what you had seen was consistent with the history that you obtained from this girl? ... Do you have an opinion? All I'm asking you is if you have an opinion, yes or no?" A. "Yes, I do." Q. "What is your opinion, sir, within a reasonable degree of medical certainty?" A. "It certainly appears as though the girl had been molested."

necessarily to be excluded merely because the conclusion of the witness reaches or approaches the ultimate issue before the jury. *Commonwealth* v. *Dawn*, 302 Mass. 255, 259. *Commonwealth* v. *Chapin*, 333 Mass. 610, 625. *Commonwealth* v. *van Kooiman*, 353 Mass. 759. The further argument is that, since the doctor had already testified that the first girl had given the doctor a history of having been forced into an automobile and driven out into the country and forced to have sexual relations, the question called for an opinion as to the truthfulness of her version of the matter. This court held, in *Commonwealth* v. *Gardner*, 350 Mass. 664, 665–667, where the defendant and alleged victim had both testified, that it was error for the district attorney to elicit from a medical witness in a rape case that there had been "forcible entry" of the alleged victim. In that case (at p. 667) we said: "We are not persuaded that a gynecologist, or other expert, possesses skills or special experience which might enable him to determine, from factors such as these [his examination of the victim, her emotional state, and her statement to him of what had happened], that acts of intercourse amounted to rape. . . . Where the jury are equally capable of drawing the conclusion sought from an expert witness, the expert's testimony is inadmissible."

In the circumstances of the case before us, the question at issue was an appropriate one. The question immediately followed a series of other questions addressed by the district attorney to the doctor as to his findings upon physical examination of the young lady, viz. abrasions of the vaginal area, dirt on her legs and thighs, and sensitivity to touch in this area of her body. The question as to whether what the doctor had "seen" was "consistent with" the history was not, as it was in the *Gardner* case, an attempt to elicit from the expert witness a direct opinion that a rape had occurred. Such a direct opinion would have been, in this case, beyond the witness's appropriate province as an expert witness. The question here is rather in the category of another group of cases. In *Commonwealth* v. *Donoghue*, 266 Mass. 391, 396, it was ruled proper for the prosecutor,

in the trial of an indictment for illegal abortion, to ask a medical witness, "Was the condition that you found disclosed on the autopsy consistent with an abortion having been performed on this girl?" In *Commonwealth* v. *McGarty*, 323 Mass. 435, 439, this court found no error in the admission in evidence of the testimony of a medical expert who examined the body that his physical findings were consistent with the victim's having been raped before the killing.

The question in the case before us did not seek from the witness an intrusion into the jury's function of judging the credibility of the witnesses, but rather sought an expert conclusion which was material to the case. The question, as read in the context of the entire questioning of the witness, called for no more than an opinion as to whether what he had seen was consistent with sexual intercourse.

We observe also that the precise question here objected to, as referring to the first girl, was also asked of Dr. O'Neil and was answered affirmatively by him without objection by defence counsel, with reference to the doctor's examination and conclusions concerning the second girl. Since the Commonwealth presented evidence that the defendant had raped both girls, the question and answer concerning the first girl and here claimed as error were merely cumulative.

Although the question here was proper as read in the context of the entire interrogation of the doctor, we add that the better practice in eliciting such an expert opinion is to phrase a question which states precisely what opinion is sought. Within the wording of the preliminary question there should be a clear and unambiguous showing that an admissible opinion is elicited rather than an objectionable one like that in the *Gardner* case. For example, in the case before us, the preliminary question preferably should have inquired of the doctor if, from what he had seen, he had an opinion as to whether the girl had been involved in sexual intercourse.

The answer of Dr. O'Neil was not responsive to the question. However, there was no motion at any time to strike

the answer, and therefore the defence correctly does not now raise the issue of the nonresponsiveness of the answer. Nevertheless, we have considered the doctor's answer ("It certainly appears as though the girl had been molested"), in the light of the rule of the *Gardner* case, and in the light of the ambiguity of the word "molested." In recounting the history as taken from the second girl, the doctor had stated that she told him that she had been "*forcibly* molested" (emphasis supplied). From this the jury should have inferred no more from the use of the word "molested" in the nonresponsive answer than that the· doctor was of the opinion that the findings were consistent with sexual intercourse.

2. Assignment 2 alleges error in the judge's refusal to direct a verdict for Montmeny for the alleged robbery of the first girl. The ruling was correct. There was evidence that Montmeny had taken money from the wallet of the second girl; that both men asked the first girl if she had any money, and the other person (not Montmeny) reached into the first girl's pocketbook and took her money. One of the girls testified that just after the girls had been forced into the automobile, Montmeny said that they "wanted our money and a little loving." From this evidence it is clear that Montmeny was present as a principal, aiding and abetting a robbery from both girls. *Commonwealth* v. *McAuliffe*, 319 Mass. 635, 637. *Commonwealth* v. *Conroy*, 333 Mass. 751, 755. *Commonwealth* v. *Dahlstrom*, 345 Mass. 130, 132.

*Judgments affirmed.*