COMMONWEALTH *vs.* FRANK MENDRALA
(and three companion cases[1]).

Hampshire.    March 14, 1985. — July 19, 1985.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Practice, Criminal*, Required finding. *Evidence*, Hearsay, Spontaneous utterance, Expert opinion, Relevancy and materiality. *Identification. Witness*, Expert. *Indecent Assault and Battery. Rape.*

At the trial of indictments for indecent assault and battery and attempted rape the judge, in his discretion, correctly permitted police officers to testify that the complainant, on seeing the two defendants as they lay handcuffed on the ground, had screamed that they were "the ones who had hurt her," where, although the complainant's failure to acknowledge this identification of the defendants precluded its admission under the principles of *Commonwealth* v. *Daye*, 393 Mass. 55 (1984), the identification was nevertheless admissible under the "spontaneous utterance" exception to the hearsay rule. [400-401]

At the trial of indictments for indecent assault and battery and attempted rape it was reversible error, during testimony by the emergency room physician at the hospital to which the complainant had been taken after the incident, to permit the prosecutor to elicit, over defense counsel's objection, the witness's direct opinion that the complainant had been the victim of a sexual assault. [402-404]

In the circumstances, the judge at the trial of indictments charging indecent assault and battery and attempted rape did not abuse his discretion in excluding expert testimony offered to assist the jury in assessing the effect of alcohol, enhanced by the smoking of marihuana, on the complainant's ability to perceive, recollect, or communicate. [405]

INDICTMENTS found and returned in the Superior Court Department on January 17, 1983.

The cases were tried before *Charles R. Alberti*, J.

*Frederick U. Fierst (Wendy Sibbison* with him) for Frank Mendrala.

[1] One of the companion cases is against Frank Mendrala and two are against John Bailey.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for John Bailey.

*Charles K. Stephenson,* Assistant District Attorney, for the Commonwealth.

DREBEN, J.  Convicted of indecent assault and battery and attempted rape, the defendants appeal claiming error in evidentiary rulings by the trial judge and also urging that they are entitled to a new trial by reason of prosecutorial misconduct. We reverse because, contrary to the principles of *Commonwealth* v. *Gardner,* 350 Mass. 664, 665-667 (1966), and *Commonwealth* v. *Montmeny,* 360 Mass. 526, 528 (1971), the Commonwealth was permitted to elicit, over objection, a direct opinion from a physician that the complainant was the victim of a sexual assault.

1. *Bailey's motion for a required finding of not guilty — admission of spontaneous exclamation.*  Bailey claims that he was entitled to a required finding of not guilty because the only evidence connecting him to the crimes was inadmissible. Based on the complainant's testimony, the jury could have found the following facts. The complainant, a twenty-one year old woman, was picked up by three men in a car. She was "loaded," by which she meant "drunk." In the vehicle, she joined the men in drinking from a bottle of Kahlua and smoking a marihuana cigarette. The driver of the car refused to take the route she requested, and when she asked the men to turn the car around, they started laughing. After repeated requests she was permitted to alight to relieve herself in an isolated area. When she ran to some bushes, two of the men followed her, prevented her from pulling her pants up, commented on her "nice ass," and took turns "poking" and "touching" her vagina with their fingers. Thereafter, the two men, whom she identified as the driver and the front seat passenger, dragged her back toward the car at which time the headlights of another car became visible.

The second car was a police car, and one of the officers in it testified that he noticed a young woman with her pants down coming out of the darkness near the rear of the first car. She tried to run away but was placed in the back of the police car

where there was a police dog. The officer also noticed a person wearing a white cap (who later turned out to be Mendrala) enter the car through the driver's side door. Both officers testified that there was "a lot of commotion" or "a lot of movement" in the first car. The car, which appeared to have two people in the front seat, backed away, turned around, and was followed by the police car at a speed of fifty to sixty miles an hour. After travelling two tenths of a mile, the first car hit a pothole and stopped.

At the direction of the police officers, the two occupants of the car emerged, were handcuffed and forced to lie on the ground in the beam of the cruiser's headlights. According to the officers, the complainant, hysterical, "began to approach the two subjects on the ground screaming that they were the ones who had hurt her." Both officers identified the driver as Mendrala and the passenger as Bailey.

Bailey claims that, although at the time the Commonwealth rested its case, see *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976),[2] there was evidence that he was one of the three men in the car with the complainant, there was no evidence, other than the hearsay testimony of the officers, that he was one of the two men who allegedly assaulted her. He recognizes that the complainant testified that one of her assailants had been the front seat passenger while all four persons had been in the car, but he points out that she testified that she did not see the third man after she alighted from the car. At trial she identified Mendrala as the driver, but did not identify Bailey. The critical evidence, therefore, is the testimony of the police officers recounting the complainant's scream identifying the two men on the ground as her assailants.

Bailey claims that the principles of *Commonwealth* v. *Daye*, 393 Mass. 55 (1984), preclude admission of this hearsay iden-tification. The *Daye* decision prevents substantive use of an extrajudicial identification unless the identifying witness ac-knowledges that the identification was, in fact, made. Other-

---

[2] Bailey's case weakened during the defense. Mendrala took the stand and stated that Bailey was the front seat passenger.

wise, the identification is not sufficiently reliable. Its "probative worth is outweighed by 'the hazard of error or falsity in the reporting'". *Daye* at 61, quoting from McCormick, The Turncoat Witness: Previous Statements as Substantive Evidence, 25 Tex. L. Rev. 573, 588 (1947). The *Daye* court allied itself with those authorities which construe Fed. R. Evid. 801(d) (1) (C) as inapplicable to such testimony. *Id.* at 60-61 nn. 8 and 9.

Nothing in *Daye* suggests that an identification whose reliability is established by another exception to the hearsay proscription is to be excluded. The judge admitted the evidence as a spontaneous exclamation and "could well have concluded within his 'broad discretion'" that the complainant's statements fell within this recognized exception. *Commonwealth* v. *Sellon*, 380 Mass. 220, 229 (1980). *Commonwealth* v. *Hampton*, 351 Mass. 447, 449 (1966). *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 221-224 (1973). *Commonwealth* v. *Puleio*, 394 Mass. 101, 104 (1985). *Commonwealth* v. *Burden*, 15 Mass. App. Ct. 666, 676-677 (1983). It appears that the complainant's identification was "instinctual" and not "contrived and calculated." *Commonwealth* v. *White*, 370 Mass. 703, 713 (1976).[3]

In sum, although the identification could not qualify under the exception to the hearsay rule set forth in *Daye*, it was admissible in the judge's discretion as a spontaneous utterance. Liacos, Massachusetts Evidence 350-351 (5th ed. 1981).[4]

---

[3] The reason given by 6 Wigmore, Evidence § 1747 (3d ed. 1940), and quoted with approval in *Commonwealth* v. *McLaughlin*, 364 Mass. at 222 for the "spontaneous exclamation" exception is based on the experience that "a stress of nervous excitement . . . stills the reflective faculties and removes their control, so that the utterance . . . is a spontaneous and sincere response . . . . Since this utterance is made under the immediate and uncontrolled domination of the senses . . . when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness) . . . ." Although there has been some criticism of this reasoning, see discussion in 4 Weinstein & Berger, Evidence § 803 (2) [01] at 803-86-803-87 (1984), the exception is firmly implanted.

[4] We note that defense counsel in this case was able to cross-examine the officers (the complainant was available for examination as well) to develop for the trier of fact any weaknesses in the identification. Thus counsel was

Since there was sufficient evidence of identification, the denial of Bailey's motion for a required finding of not guilty was proper.

2. *Dr. Conway's opinion.* Dr. Conway was the emergency room physician at the hospital where the complainant was taken after the police chase. He testified that, when she came in, her clothes were in disarray and her face was dirty and appeared tear-stained. She had bruises on her wrists, knees, and buttocks, and there was increased redness in her vaginal area. He took her history and described her as emotionally upset. After an extensive voir dire, he was asked, in each case over the defendant's objection:

Q. "Doctor, based on these findings and the history that you derived from [the complainant] can you form an opinion as to a medical certainty as to the cause of the state she was in when you examined her there?"

A. "Yes."

Q. "What is that opinion?"

A. "In my opinion based on my experience, based on the history and the physical exam, my opinion is that the patient was a victim of a sexual assault."

As is often the case where there are charges of rape or sexual assault, the question of guilt or innocence rests in large part "upon whether the jury believed the victim's version of what happened or the defendant[s']."[5] *Commonwealth* v. *Gardner*,

---

able to bring before the jury the complainant's statement that she was "shook up" and "confused" at the time as well as the officer's statement that the complainant's hysteria could have been caused, in part, by the police dog.

[5] Mendrala's version was that the complainant was very drunk and rambunctious and directed him to drive to an area where there were dirt roads near her home. She wanted to drive his car and "do four wheelings" (drive fast over bumps in the road) but he refused. During an unsuccessful attempt to build a bonfire, the complainant fell down several times. While the group was sitting in the car after the bonfire attempt, the complainant and a male hitchhiker who had been in the car left the vehicle to relieve themselves. After about three minutes, he saw headlights and decided to leave as he was not of legal drinking age and was nervous about having alcohol in the car. He did not see the complainant or the hitchhiker and drove away. When he saw the cruiser's blue lights, he pulled over immediately. He denied ever touching the woman.

350 Mass. 664, 667 (1966). In these circumstances, the witness's opinion "presented as the unbiased testimony of an expert, could have substantially influenced the jury's decision as to whom to believe." *Id.* at 667. See McCormick, Evidence § 12, at 30-31 (3d ed. 1984). The *Gardner* court held that the "possible prejudice" to the defendant by the admission of a gynecologist's opinion that "there was forcible entry" entitled the defendant to a new trial on the charge of rape. *Id.* at 666, 667.

"Under modern standards, expert testimony on matters within the witness's field of expertise is admissible . . . even if the expert's opinion touches on the ultimate issues that the jury must decide." *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). *Commonwealth* v. *Montmeny*, 360 Mass. at 527-529. *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977). See Fed. R. Evid. 704(a) and Proposed Mass. R. Evid. 704 (July, 1980). To be admissible, however, the testimony must be of assistance to the jury in reaching a decision. As stated in *Simon* v. *Solomon supra* at 105, an "expert may not . . . offer his opinion on issues that the jury are equally competent to assess, such as credibility of witnesses. [Citations to *Gardner, supra* at 665-667, and *Montmeny, supra* at 528-529.] On such questions, the influence of an expert's opinion may threaten the independence of the jury's decision. [Citation to *Gardner, supra* at 667]." See generally *Commonwealth* v. *Francis*, 390 Mass. 89, 98-102 (1983). See also 7 Wigmore, Evidence § 1925 (Chadbourn rev. 1978) ("Does the jury *need any inference* from the witness, either because of his skill or because his observed data cannot be adequately reproduced by him?" [emphasis original]).[6]

[6] Contrary to the Commonwealth's suggestion, adoption of the Proposed Massachusetts Rules of Evidence would not lead to a different result. See Advisory Committee's Note on Federal Rule 704, 28 U.S.C. app. at 704 (1982), stating: "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time [or "if its probative value is substantially outweighed by the danger of unfair prejudice"]. These provisions afford ample assurances against the admission of opinions which would merely tell the

Unless there are special factual circumstances suggesting that a jury may be helped by an expert in rape or sexual assault cases,[7] a witness, no matter how well qualified, may not be asked directly whether a rape or a sexual assault has occurred. "Such a direct opinion . . . [is] beyond the witness's appropriate province as an expert witness." *Commonwealth* v. *Montmeny*, 360 Mass. at 528. In *Gardner*, 350 Mass. at 667, the court was "not persuaded that a gynecologist, *or other expert*, possesses skills or special experience which might enable him to determine, from factors such as these [his examination of the complainant, her emotional state and her story of what happened],[8] that acts of intercourse amounted to rape" (emphasis supplied). Like the doctor in the *Gardner* case, Dr. Conway admitted that he could not have reached his conclusion solely on the basis of his physical examination of the victim. He conceded on cross-examination that if the victim had "said she had fallen off her bike, the bruises that I found could be those caused by falling off a bicycle, that's true." We think that here, as in *Gardner*, 350 Mass. at 667, "the jury were equally capable of drawing the conclusion sought from an expert witness [and that] the expert's testimony is inadmissible."[9]

---

jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." See also *State* v. *Saldana*, 324 N.W.2d 227, 231 (Minn. 1982) where the Minnesota Supreme Court reversed a conviction because of the admission of expert testimony that a rape had occurred. Minnesota has adopted rules of evidence similar to Fed. R. Evid. 704(a). Minn. R. Evid. 704.

[7] It may be that in certain cases involving children expert testimony may be helpful. See *State* v. *Myers*, 359 N.W.2d 604, 610 (Minn. 1984). This may, perhaps, be the reasoning of *Commonwealth* v. *van Kooiman*, 353 Mass. 759 (1967).

[8] There is an equal danger of enhancing the complainant's testimony when the expert relates statements made by the complainant, see *Commonwealth* v. *Spare*, 353 Mass. 263, 266 (1967), or bases his opinion on the history taken from the victim. See *Commonwealth* v. *Russ*, 232 Mass. 58, 73-74 (1919); *Commonwealth* v. *Howard*, 355 Mass. 526, 530-531 (1969). Liacos, op. cit. 112. Both occurred here. But see 3 Wigmore, Evidence § 688 (Chadbourn rev. 1970).

[9] The cases cited by the Commonwealth do not support its position or can be distinguished. *Commonwealth* v. *Montmeny*, 360 Mass. at 526,

3. *Exclusion of testimony of psychiatrist.* The defendants sought to introduce testimony of a psychiatrist concerning the effect of alcohol, enhanced by the smoking of marihuana, on the complainant's ability to perceive, recollect, or communicate. He also would have testified to the effect of the two drugs, in combination, in causing delusions or hallucinations.

The judge held a lengthy voir dire, specifically alluded to *Commonwealth* v. *Francis*, 390 Mass. 89 (1983), and carefully weighed whether the expert testimony would aid the jury. After determining that the psychiatrist was qualified, he considered whether the doctor's opinion "couching it in medical terms" as opposed to what might be a "lay person's understanding . . . , would so prejudice the jury function" as to outweigh the benefits. He decided, based on common knowledge of the known effects of alcohol on a person's ability to perceive, recollect, and communicate, that the doctor's testimony should be excluded.

Appellate courts give "great deference to the rulings of trial judges in this area of the law of evidence." *Commonwealth* v. *Francis*, 390 Mass. at 99. We see no abuse of discretion in the judge's decision, particularly, where as here, the expert's opinion impinges on the decision as to "what testimony to believe." *Id.* at 101 (see at 98-102).[10] The judge on remand,

---

while permitting questioning as to whether what was seen "was consistent with" sexual intercourse affirms the principle that one may not seek a direct opinion that a rape has occurred. *Id.* at 528. In *Commonwealth* v. *Howard*, 355 Mass. 526 (1969), the basis for affirming was lack of prejudice. In that case and in *Commonwealth* v. *van Kooiman*, 353 Mass. 759 (1967), physical examinations of children were involved. The court found that the questions were within the domain of the experts' professional knowledge and, in the latter case, stated expressly that the opinion would be of assistance to the jury.

[10] The defendant cites a number of cases suggesting that expert testimony as to the effect of alcohol on a defendant is admissible and, in some cases, required. See *Commonwealth* v. *Loretta*, 386 Mass. 794, 800 (1982); *Commonwealth* v. *Paszko*, 391 Mass. 164, 197 (1984); *Commonwealth* v. *Henson*, 394 Mass. 584, 592-594 (1985). Considerations other than credibility are, however, implicated where the question is the criminal intent of a defendant. See *Commonwealth* v. *McDermott*, 393 Mass. 451, 457 (1984). Moreover, rules of evidence applicable to defendants do not necessarily

of course, is not precluded, depending on the evidence before him, from deciding that on some questions an expert opinion might aid the jury, e.g., the enhancement, if any, of the effects of alcohol by marihuana, or the significance of blood alcohol level. See *Commonwealth* v. *Griffin*, 19 Mass. App. Ct. 174, 186 (1985). Cf. *Holloman* v. *Pioneer Dodge Co.*, 3 Mass. App. Ct. 761 (1975).

4. *Other claims of error.* (a) The defendant's claim of error concerning the admission of the police officer's testimony (unobjected to, and, perhaps unexpected) of loss of recall by victims of sexual assault is unlikely to arise on retrial. Any opinion on this subject may, of course, only be elicited after the witness has been qualified as an expert.

(b) Whether the defendants may, on retrial, question the complainant as to whether she has a history of alcohol abuse will depend on whether they can show the relevancy of such inquiry. See *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 231, cert. denied, 389 U.S. 916 (1967), *S. C.* 364 Mass. 211 (1973); *Commonwealth* v. *Caine*, 366 Mass. 366, 369 (1974); Liacos, op. cit. at 144.

(c) The defendants' claims of prosecutorial misconduct need not be addressed. We trust that Massachusetts appellate courts have laid such stress on the impropriety of prosecutors' vouching for the credibility of their witnesses and referring to facts not in evidence that the claimed errors, if any, will not be repeated.

5. *Conclusion.* For the reasons stated in part 2 of this opinion, the judgments are reversed, the verdicts are set aside, and the cases are remanded to the Superior Court for a new trial.

*So ordered.*

---

apply to witnesses. See *Commonwealth* v. *Walker*, 392 Mass. 152, 159 (1984) (polygraph examinations). See also Fed. R. Evid. 704(b).