# COMMONWEALTH *vs.* QUESHON IVY.

No. 00-P-1608.

Suffolk. March 12, 2002. - September 16, 2002.

Present: PORADA, BERRY, & McHUGH, JJ.

*Evidence,* Spontaneous utterance, Identification, Impeachment of credibility, Prior conviction, Cross-examination, Absence of witness. *Identification. Constitutional Law,* Confrontation of witnesses. *Witness,* Unavailability. *Practice, Criminal,* Instructions to jury.

At the trial of a complaint charging the defendant with assault and battery on the victim, the judge correctly admitted, as excited utterances, statements of the victim to a police officer while being administered to in a hospital emergency room the morning after the incident, where the victim's state of distress, whimpering, and fear demonstrated that she remained under the stress of the exciting event. [854-855]

At the trial of a complaint charging the defendant with assault and battery on the victim, the judge correctly admitted, under the excited utterance doctrine, the victim's extrajudicial identification of the defendant, where the admission of the identification was not inconsistent with the requirements set out in *Commonwealth* v. *Daye,* 393 Mass. 55, 61-62 (1984), a case distinguishable since it involved a wholly different hearsay exception; and where the admission in evidence of the out-of-court identification under the excited utterance doctrine, without a showing that the victim was unavailable to testify, did not violate the defendant's confrontation rights, inasmuch as the excited utterance doctrine is a hearsay exception that has indicia of reliability and is firmly rooted in evidentiary jurisprudence. [855-859]

At a criminal trial, there was no substantial risk of a miscarriage of justice created by the judge's exclusion of certain impeachment evidence regarding the nonappearing declarant-victim's prior drug conviction, which concerned a collateral matter not having direct relevance to the defendant's guilt or innocence, and was attenuated by the defendant's testimony about the victim's drug use and her having served time on a prior conviction. [859]

At a criminal trial, there was no impermissible shifting of the burden of proof in the Commonwealth's cross-examination of the defendant concerning his failure to produce certain documents. [859-860]

At a criminal trial, there was no abuse of discretion in the judge's declining to give a missing witness instruction, where the Commonwealth presented plausible reasons for not calling the victim-witness, and where there was no basis for an inference that, if the victim had testified, she would have given testimony unfavorable to the Commonwealth. [860-861]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on February 17, 1999.

The case was tried before *Sarah B. Singer, J.*

*Thomas J. Chirokas* for the defendant.

*Alex G. Philipson*, Assistant District Attorney, for the Commonwealth.

BERRY, J. The defendant challenges his conviction for assault and battery upon his then girlfriend. G. L. c. 265, § 13A.[1] The defendant's appellate claims concern: (1) the admission as excited utterances of the complainant's statements to a police officer describing the assault; (2) that the admission of the victim's out-of-court identification as within the excited utterance evidence violated the defendant's confrontation rights — an issue of first impression; (3) the exclusion of impeachment evidence concerning the nonappearing declarant-victim's prior conviction; (4) impermissible burden shifting in the Commonwealth's cross-examination of the defendant concerning his failure to produce certain documents; and (5) the trial judge's failure to give an absent witness instruction.

1. *Factual background.* The trial evidence may be summarized thusly. On the morning of February 17, 1999, Officer Lisa Venus, responding to a radio bulletin, proceeded to the emergency room at the New England Medical Center, where the victim was being treated. The victim was curled up in a fetal position and whimpering. Her right eye was red and swollen. She appeared frightened and "exhaust[ed] from the crying." The victim described the defendant's assault upon her to the officer.

The victim did not appear at trial, and her statements to Officer Venus at the hospital, admitted as excited utterances, provided the following evidence of the assault and the extrajudicial identification of the defendant.[2]

Officer Venus testified that the victim identified the defendant by name, stating that her boyfriend, Queshon Ivy, had beaten her. When the officer asked the victim to describe her boyfriend,

---

[1]The defendant was sentenced to two and one-half years in a house of correction.

[2]The victim's injuries were corroborated by the introduction of medical records.

the victim displayed a picture taken from her wallet and said the man in the photograph with her was Queshon Ivy. She related how the defendant had punched her in the face and stomach, and then had kicked her in the stomach. The victim was three months pregnant.[3] The beating occurred during the evening of February 16, but she could not leave the apartment until early the next morning, when the defendant went out. Later that morning, she went to the hospital.

Officer Venus further testified that the victim had provided the defendant's work address. She described how, following the interview, she and another officer went to the defendant's workplace and arrested him. While being transported to the police station, the defendant admitted that he and the victim had an argument, but he claimed he had left the apartment at around 11:00 P.M. and stayed at the Pine Street Inn. According to the defendant, the victim was playing a "game."

The defendant's trial testimony concerning the night's events was markedly different from the victim's account. The defendant testified that he and the victim were together in the apartment early that night. She "went to an AA meeting." He stayed behind. He found a "crack" cocaine pipe in the apartment, and when the victim returned he confronted her with the pipe. She denied ownership or any knowledge of why it was in the apartment. An argument ensued. Around 10:30 P.M., the defendant packed his bags and went to the Pine Street Inn, where, he testified, a person at the front desk signed him in and told him "to find a spot and go to sleep." On cross-examination, the prosecutor, over objection, was allowed to inquire why the defendant did not produce the Inn's sign-in log.

In rebuttal, the Commonwealth called the Pine Street Inn supervisor who testified that the sign-in log for February 16, 1999, was reviewed and the defendant's name was not on it. She also explained that the Inn's doors normally close around 7:30 P.M.

---

[3]According to the victim, this was not the only time the defendant had beaten her. A restraining order had previously issued under G. L. c. 209A, but had expired in November, 1998. When the officer suggested that the victim apply for another order to protect herself, the victim cried out in fear, "he's out there, he's going to get me, you can't make me go out there."

2. *Admission of the excited utterance evidence.* The defendant levels a broadside challenge against the admission of any and all of the victim's statements under the excited utterance exception to the hearsay rule. It is not necessary to restate at length the evidentiary standards governing that hearsay exception. For a comprehensive analysis, see generally *Commonwealth* v. *King,* 436 Mass. 252, 254-255 (2002). Briefly summarized to provide the legal landscape against which to analyze the defendant's claim in this case, the excited utterance doctrine works as follows. A witness's out-of-court statements are admissible if the "utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Brown,* 413 Mass. 693, 695 (1992) (internal quotation omitted). Statements have been determined reliable when made by a witness "under the stress of extreme trauma . . . and in a context where she would be expected to be truthful." *Id* at 696.

Admission of a statement as an excited utterance "will only be disturbed for abuse of discretion." *King,* 436 Mass. at 255. There was no such abuse of discretion here, and there was no error.[4] The circumstances in which the statements were given fall well within the existing evidentiary standards for excited utterances. The victim was lying on a medical table in an emergency room, being treated for her injuries, and experiencing the pain and stress of the incident. The statements were spoken "while the victim remained in pain and emotional distress." *Commonwealth* v. *Tevlin,* 433 Mass. 305, 319 (2001). The victim's state of distress, whimpering and fear demonstrate that she remained under the stress of the exciting event, the beating. Her distraught condition, like that of the victim in *Tevlin,* had not markedly dissipated at the time she spoke to the officer.

The defendant contends that the time lapse from when she

---

[4]Before trial, the defendant moved in limine to exclude the victim's statements. The judge denied the motion, but no objection was made at trial. Therefore, the issue was not properly preserved. The proper standard of review is whether admission of the excited utterance evidence was error and, if so, whether there was a substantial risk of a miscarriage of justice.

escaped from the apartment, estimated at approximately 4:00 A.M., to the time of the interview at the hospital, approximately 8:30 A.M., was too long. However, it is not the passage of time, but rather whether the declarant remains under the influence and sway of the exciting event that is of paramountcy. See *King*, *supra* at 255. "The time lapse between the exciting event and the utterance of the statement is not determinative of the statement's reliability; rather, the test is whether or not the declarant was in fact under the stress of the exciting event at the time he or she made the statement." *Commonwealth* v. *Tracy*, 50 Mass. App. Ct. 435, 438 (2000). "[T]here can be no definite and fixed limit of time. Each case must depend upon its own circumstances." *Commonwealth* v. *DiMonte*, 427 Mass. 233, 239 (1998), quoting from *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973). Compare *Commonwealth* v. *Johnson*, 54 Mass. App. Ct. 224, 226-230 (2002) (statements of victim of beating to officers and nurse at hospital given at times ranging from one and one-half to four and one-half hours after escape from assailant admitted where victim still under trauma of beating); with *Commonwealth* v. *Hardy*, 47 Mass. App. Ct. 679, 680-685 (1999) (although a close determination, statements of victim of beating, made three hours after beating, not properly admitted as excited utterances because victim, although in pain, had calm demeanor and related details of assault with clarity and lucidity). Finally, to the extent the defendant argues that the statements were improperly admitted because given in response to questions, "[a] statement may be spontaneous even if made in response to a question." *Commonwealth* v. *Nunes*, 430 Mass. 1, 4 n.3 (1999). See *Commonwealth* v. *Fuller*, 399 Mass. 678, 682-683 & n.8 (1987).

3. *Confrontation and the out-of-court identification.* The defendant also challenges the introduction under the excited utterance doctrine of the victim's extrajudicial identification. Two points are raised: first, that the admission of the out-of-court identification was inconsistent with the requirements set out in *Commonwealth* v. *Daye*, 393 Mass. 55, 61-62 (1984); and

second, that the substantive admission of an identification by a nontestifying declarant violated confrontation rights.[5]

We need only briefly address the initial contention that the admission of the extrajudicial identification was inconsistent with *Daye* because the issue was determined adversely to the defendant's claim by our holding in *Commonwealth* v. *Mendrala,* 20 Mass. App. Ct. 398, 401 (1985). By way of background, *Daye* set as preconditions for the admission of an out-of-court identification under the prior inconsistent statement hearsay exception that the identifying declarant must testify at trial, be subject to cross examination, and acknowledge the prior identification. See *Daye, supra* at 61. As *Mendrala* made clear, *Daye* is distinguishable because that case involved a hearsay exception wholly different from the one at bar in which the out-of-court identification was admitted as an excited utterance exception. "Nothing in *Daye* suggests that an identification whose reliability is established by another exception to the hearsay proscription is to be excluded. The judge admitted the [identification] evidence as a spontaneous exclamation and could well have concluded within his broad discretion that the complainant's statements fell within this recognized exception." *Mendrala, supra* (internal citations and quotations omitted). Thus, in this case there was no error in admission of the identification under this evidentiary doctrine.

We turn then to the defendant's second, constitutionally based challenge, which presents an issue not previously addressed,[6] that is: whether an out-of-court identification admitted as substantive evidence under the excited utterance doctrine violates confrontation rights because the identifying declarant is not required to testify at trial and need not be demonstrated to

---

[5]As previously referenced, there was no objection in general to the admission of the excited utterance evidence. There also was no particularized objection directed to admission of the identification evidence. On appeal, the defendant argues ineffective assistance of counsel in not interposing such an objection. That ineffective assistance claim, in effect, conflates here because "if an omission of counsel does not present a substantial risk of a miscarriage of justice . . . there is no basis for an ineffective assistance of counsel claim under either the Federal or the State Constitution." *Commonwealth* v. *Curtis,* 417 Mass. 619, 624-625 n.4 (1994).

[6]A constitutional confrontation challenge was not raised in *Commonwealth* v. *Mendrala,* 20 Mass. App. Ct. 398 (1985).

be unavailable. This, of course, differs from the prior inconsistent statement doctrine precisely because, under that doctrine, the identifying declarant witness is required to testify at trial and is required to acknowledge the prior identification. See *Daye, supra.* However, the constitutional analysis of whether confrontation rights are violated by an extrajudicial identification admitted under a hearsay exception does not turn on foundational requirements, such as witness availability or appearance at trial. Rather, the constitutional inquiry turns on whether the particular hearsay exception has indicia of reliability and is firmly rooted in evidentiary jurisprudence.

Analysis of the interplay between longstanding evidentiary-based hearsay exceptions and constitutionally based confrontation rights does not postulate greater protection under art. 12 than under the Sixth Amendment. Thus, consistent with "[t]he United States Supreme Court [holding] that the admission of hearsay under a 'firmly rooted' exception, such as an excited or spontaneous utterance, without a showing of unavailability does not violate the confrontation clause of the Sixth Amendment to the United States Constitution," the Supreme Judicial Court has similarly held that Art. 12 confrontation rights are not violated. *Commonwealth* v. *Whelton,* 428 Mass. 24, 28-29 (1998), citing with approval *White* v. *Illinois,* 502 U.S. 346, 353-358 (1992). "[A]rt. 12, like the Sixth Amendment to the United States Constitution, does not require a showing that the declarant is unavailable to testify at trial before a statement is admitted under the spontaneous utterance exception to the rule against hearsay." *Whelton, supra* at 29.

The *Whelton* and *White* cases concerned *statements qua statements* admitted as excited utterances, but we see no reason why the principles announced in the two cases would not be equally applicable to a *statement of identification.*

> "[T]he out-of-court statements [and here the out-of-court statement of identification] admitted in this case had substantial probative value, value that could not be duplicated simply by the declarant later testifying in court. To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrong-headedness, given that the Confrontation Clause has as a

basic purpose the promotion of the integrity of the fact-finding process. . . . [A] statement that qualifies for admission under a firmly rooted hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability. Given the evidentiary value of such statements, their reliability[7] and that establishing a generally applicable unavailability rule would have few practical benefits while imposing pointless litigation costs . . . . A contrary rule [prohibiting the admission of substantive evidence] would result in exactly the kind of wholesale revision of the laws of evidence that we [have] expressly disavowed . . . . We therefore see no basis . . . for excluding from trial, under the aegis of the Confrontation Clause, evidence embraced within such exceptions to the hearsay rule as those for spontaneous declarations."

*White*, 502 U.S. at 356-357 (internal citations and quotations omitted).[8]

Finally, as the Supreme Judicial Court has observed, there may be an inherent element of reliability in that "a spontaneous utterance may justifiably carry more weight with the jury than the declarant's live testimony." *Whelton, supra* at 28-29, citing *White* v. *Illinois, supra* at 356. Moreover, in this case, the reliability of the victim's identification was corroborated by independent evidence, including the defendant's admission to being in the apartment with the victim the night before and having an argument with her; the victim's physical injuries manifested the next morning; and the absence of corroboration

---

[7]There is little doubt this hearsay exception is firmly rooted in the law of evidence. "The exception for spontaneous declarations is at least two centuries old, see 6 J. Wigmore, Evidence § 1747, p. 195 (J. Chadbourn rev. 1976), and may date to the late 17th century. See *Thompson* v. *Trevanion*, 90 Eng. Rep. 179 (K. B. 1694). It is currently recognized under Federal Rule of Evidence 803(2), and in nearly four-fifths of the States [including Massachusetts]." *White* v. *Illinois*, 502 U.S. 346, 355 n.8 (1992).

[8]*Commonwealth* v. *Kirk*, 39 Mass. App. Ct. 225, 226 (1995), on which the defendant relies, is distinguishable. In that case, the victim's statement that "[her] boyfriend" had hurt her was admitted as a spontaneous utterance. *Ibid.* However, because her statement "did not identify the defendant, or anyone else, as her boyfriend," *id.* at 228, we sought to determine whether there was independent evidence, or another hearsay evidentiary basis, for identifying the defendant as the boyfriend. Because the identification appeared only in the victim's affidavit and a G.L. c. 209A order, neither of which had an evidentiary basis for introduction at trial, we reversed the conviction. See *id.* at 228-232.

of the defendant's statements that he had slept at the Pine Street Inn.

4. *Failure to admit impeachment evidence concerning the nontestifying declarant.* The trial judge excluded the defendant's impeachment evidence concerning the victim's prior conviction. In *Commonwealth* v. *Mahar*, 430 Mass. 643 (2000), the court found "no reason to put a proponent of an absent witness in a better position than a proponent of a live witness." *Id.* at 650. The court, therefore, accepted the principles of rule 806 of the Proposed Massachusetts Rules of Evidence, which states, "the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." *Id.* at 649, quoting from Proposed Mass.R.Evid. 806. See Fed.R.Evid. 806.

The Commonwealth concedes it was error to exclude the impeachment evidence of the victim's prior drug conviction. Because the defendant failed to object at trial, our review of the error is governed by whether there is a substantial risk of a miscarriage of justice. There is no such risk. The prior conviction concerned a collateral matter not having direct "relevance to the defendant's guilt or innocence." *Commonwealth* v. *Dwyer*, 10 Mass. App. Ct. 707, 713 (1980). Cf. *Commonwealth* v. *Moses*, 436 Mass. 598, 602-603 (2002). We also note that any prejudice from the exclusion — which we believe was de minimis — was attenuated by defendant's testimony about the victim's drug use and the reference to her having served time on a prior conviction.

5. *Cross-examination concerning the defendant's nonproduction of the Pine Street Inn record.* On cross-examination, and over objection, the prosecutor inquired why the defendant had not produced the sign-in log from the Pine Street Inn for the night of the assault. The defendant answered that he was incarcerated and, therefore, was unable to get the document. The defendant argues that the questioning impermissibly shifted the burden of proof. The inquiry was proper. See *Commonwealth* v. *Ramey*, 368 Mass. 109, 112 (1975) (prosecutor could comment on defendant's failure to obtain time cards from work which would have corroborated alibi); *Commonwealth* v. *Silva*,

401 Mass. 318, 327-328 (1987) (proper to ask defendant if he knew he could subpoena documents to corroborate claim that witness "wanted to get him"); *Commonwealth* v. *Matthews*, 45 Mass. App. Ct. 444, 450 (1998), cert. denied, 526 U.S. 1101 (1999) (no error in cross-examining defendant concerning failure to produce record evidence of alleged employment when defendant claimed he was working the day of the assault).

6. *Failure to give missing witness instruction.* At the close of the evidence, the defendant requested, but the trial judge declined to give, a missing witness instruction. "[W]hether to give a missing witness instruction is a decision that must be made on a case-by-case basis, in the discretion of the trial judge . . . [whose] decision will be overturned on appeal only if it was 'manifestly unreasonable.' " *Commonwealth* v. *Thomas*, 429 Mass. 146, 151 (1999), quoting from *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 86 (1993). The determination involves consideration of: "(1) whether the case against the defendant is strong and whether, faced with the evidence, the defendant would be likely to call the missing witness if innocent; (2) whether the evidence to be given by the missing witness is important, central to the case, or just collateral or cumulative; (3) whether the party who fails to call the witness has superior knowledge of the whereabouts of the witness; and (4) whether the party has a 'plausible reason' for not producing the witness." *Commonwealth* v. *Alves*, 50 Mass. App. Ct. 796, 802 (2001) (footnote omitted), quoting from *Commonwealth* v. *Graves, supra* at 83. See *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134-135 (1986). The Commonwealth presented plausible reasons for not calling the victim: the prosecution represented that efforts had been made to find the victim, but she was homeless and moving from shelter to shelter such that her transience rendered the efforts to find her fruitless. In addition, the victim had already expressed her fears about appearing in court proceedings adverse to the defendant, and she was so reluctant as to express fear and unwillingness to seek renewal of a restraining order against the defendant. See note 3, *supra*; *Commonwealth* v. *Crawford*, 417 Mass. 358, 367 (1994) (where victim's testimony was admitted as hearsay in order to spare her trauma of reliving experience, no missing witness

instruction warranted); *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 243-244 (1990) (given witness's fear and intimidation by persons related to defendant, declination to give missing witness instruction proper). Finally, in this case, "[t]here is no basis for an inference that if [the victim] had testified, [she] would have given testimony unfavorable to the Commonwealth." *Commonwealth* v. *Keniston*, 423 Mass. 304, 314 (1996).

*Judgment affirmed.*