**Vincent MITCHELL, Petitioner,**

v.

**Robert HOKE, Superintendent, Eastern Correctional Facility, Respondent.**

No. CV–89–2927.

United States District Court,
E.D. New York.

Sept. 5, 1990.

er's confrontation rights were violated through the introduction of identification hearsay. The writ must therefore be granted.

## I. FACTS

Petitioner and another defendant were tried jointly. The government's proof consisted of testimony of an alleged eye-witness victim to the robbery, Bobby Jones, and of a police detective who investigated the case. Jones testified that he was with three others, Elliot Primus, Mitchell Warren and Jerome Trim on the night of the robbery. It is uncontroverted that all had been drinking. Jones denied smoking marijuana. He stated that petitioner and the co-defendant participated in the robbery. He identified both men as people he knew casually; petitioner lived in his mother's apartment building. Before the night of the crime, it had been four and a half years since he had last seen petitioner. Jones stated that petitioner removed and took his ring, went through his wallet and searched his pockets, and removed and took his jacket.

The police detective testified about a line-up at which Primus picked out petitioner as one of the perpetrators. During a colloquy in chambers before this testimony, the attorneys made clear, and the parties in the present habeas corpus action do not dispute, that Primus would not at trial testify that petitioner was the perpetrator.

The state never established or even suggested at trial that Primus would testify to being *unable* to identify petitioner due to memory loss, a change in petitioner's appearance, or some other reason. On the contrary, in a colloquy before the judge in chambers defense counsel claimed that Primus was now "saying Mr. Mitchell was not the person that was the person that robbed him."

Over petitioner's objection, the police detective was permitted to testify as follows:

Prosecution: And Detective, did Mr. Primus pick anyone out of that lineup?

Defense: Objection, Judge. Just what we discussed in the chambers.

Court: He can answer that yes or no.

Sam A. Schmidt, Barocas & Schmidt, P.C., New York City, for petitioner.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for respondent; Vida M. Alvy, Asst. Atty. Gen., of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Petitioner was convicted by a jury of robbery and menacing in December 1985 in the New York State Supreme Court, Queens County. The conviction was affirmed by the Appellate Division in September 1988. The Court of Appeals denied leave to appeal in April 1989. Petitioner sought a writ of habeas corpus in September 1989. As demonstrated below, petition-

Defense: Very well, Judge.

Court: Exception noted.

Detective: Yes, he did.

Prosecution: And pursuant to that did you effect an arrest, Officer?

Detective: Yes, I did.

Prosecution: And who did you arrest?

Detective: Vincent Mitchell [petitioner].

At sidebar petitioner's counsel again noted his objection.

Petitioner called three witnesses. One was Michael Warren, who was with Jones at the time of the incident. Warren claimed that Jones had been drinking and smoking marijuana and was having trouble walking. Warren stated that neither of the defendants, both of whom he knew, were the perpetrators of the crime. He also stated that shortly after the perpetrators arrived, he ran away from the scene and returned after they had left.

The defense also called Jerome Trim, another person with Jones at the time of the incident. He claimed Jones had been drinking and smoking marijuana. He testified to knowing the defendants. He also testified that neither defendant was a member of the group that committed the crime. Shortly after the perpetrators arrived, he and Warren ran away. He described himself and Warren as friends, and stated that he and Warren had discussed the case and Warren's testimony before Trim testified.

Finally, the defense called petitioner's employer, who testified that at the time of the incident, petitioner's face was covered with very noticeable scarring that was the result of an operation for which petitioner had recently received sick leave. A hospital report was admitted into evidence, but that report is not before this court.

During jury deliberations, the jury indicated on two occasions that they had reached a verdict as to one defendant but were deadlocked on the other. Eventually, they returned guilty verdicts against both.

## II. LAW

This case raises two related questions: whether the testimony of the detective violated the technical evidentiary hearsay rule and whether it violated the confrontation clause. Both questions should be answered in the affirmative. Furthermore, the error was not harmless.

### A. Hearsay Rule

■ Under New York state law, third-party testimony regarding a pretrial identification of a criminal defendant is inadmissible at trial unless the witness cannot identify the defendant on the basis of present recollection or is otherwise unavailable. New York Crim.Proc.Law § 60.25 (McKinney 1981); *People v. Bayron*, 66 N.Y.2d 77, 495 N.Y.S.2d 24, 485 N.E.2d 231 (1985) (failure of witness to identify defendants at trial out of fear does not render admissible police testimony that witness identified them at time of arrest; statute strictly construed); *People v. Nival*, 33 N.Y.2d 391, 353 N.Y.S.2d 409, 308 N.E.2d 883 (1974) (statute applies to "situation where the witness, due to lapse of time or change in appearance of the defendant, cannot make an in-court identification").

■ In the case at bar, no such showing of the unavailability of the witness was made by the prosecution. The prosecution attempted to avoid the hearsay rule by not asking the detective who Primus picked out of the lineup, but rather asking whether he picked someone, and who was arrested as a result. This is a distinction without a legal difference. The case provides a classic example of indirect hearsay. The act of the hearer (the detective) leads by direct inference to the precise words of the speaker (the identifying witness). Since the speaker's credibility must be evaluated to determine the probative force of this line of identification proof, the hearsay rule applies.

The jury could only draw one reasonable inference from the detective's testimony: that Primus selected Mitchell. The detective in effect repeated the substance of Primus's out-of-court statement. Because Primus was available to testify, the hearsay rule was violated.

### B. Confrontation Clause

The confrontation clause of the sixth amendment and the hearsay rule "stem

from the same roots" but are not identical. *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970); *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970). The purpose of the confrontation clause is to "prevent [other evidence] being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has the opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. U.S.* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). The confrontation clause is applicable to the states. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

■ Availability of the witness does not necessarily cure the violation of the confrontation clause. "In the usual case ... the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). A demonstration of unavailability can be dispensed with only when "the utility of trial confrontation is ... remote." *Id.* at n. 7. *Accord Reardon v. Manson*, 806 F.2d 39, 42 (2d Cir.1986) ("[I]n those borderline cases where the likely utility of producing the witness is remote, the Sixth Amendment's guarantee of an opportunity for effective cross-examination is satisfied where the defendant himself had the opportunity to call the declarant as a witness."), *cert. denied*, 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987).

This is obviously not a "borderline case where the likely utility of producing the witness is remote." The evidence offered through the detective, an identification of petitioner as the perpetrator, corroborating the one other eyewitness identification offered, was crucial. The parties agree that,

had Primus testified, he would not have identified petitioner. The government implies that he would have testified that "he could no longer identify petitioner," suggesting merely a loss of memory. Petitioner suggests that Primus' testimony would have been more favorable to petitioner.

We need not speculate as to precisely what Primus' testimony would have been. The burden is on the state to establish what his testimony would have been—normally by producing him. As noted earlier, Primus might have testified that defendant was *not* one of the perpetrators. At minimum, his lack of memory would have undermined his credibility and diluted the power of his lineup identification, and at most, his testimony could have directly contradicted the lineup identification. This testimony could have been of considerable value to petitioner and the jury.

Even if the utility of Primus' testimony were limited, in order to admit the detective's account the government would still have to demonstrate that Primus's identification bore "adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (quoting *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970)); *Reardon v. Manson*, 806 F.2d 39, 43 (2d Cir.1986). Third-party identification testimony where the declarant is available is not "a firmly rooted hearsay exception," either under New York state law or under the Federal Rules of Evidence, and thus "particularized guarantees of trustworthiness" must be demonstrated. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). That Primus was not prepared to testify that petitioner committed the crime throws at least some doubt upon the reliability of his prior identification.

This case is readily distinguishable from *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), where the Court admitted hearsay evidence of a witness identification. In that case, the witness took the stand but claimed not to remember the incident. A prior identification was given at a preliminary hearing,

under circumstances closely approximating those that surround the typical trial. [The witness] was under oath; respondent was represented by counsel ... respondent had every opportunity to cross-examine [the witness] and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings.

*Id.* at 165, 90 S.Ct. at 1938. Because the setting of the prior identification bespoke reliability and offered the defendant adequate protection of his rights, it was admissible. In the case at bar, there was no opportunity to cross examine Primus and test his credibility and the reliability of his identification.

■ The fact that petitioner could have called Primus as a witness does not protect his rights under the confrontation clause. It is the right to *cross* examination, as distinct from direct examination, that is protected by the confrontation clause. *See Ohio v. Roberts,* 448 U.S. 56, 70–71, 100 S.Ct. 2531, 2541–42, 65 L.Ed.2d 597 (1980); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). *See also* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567, 577–78 (1978). Had petitioner called Primus for direct examination he could not claim denial of the right to cross examine. But he did not call Primus, exercising a clear right to insist on the state's carrying the burden.

■ The government in a criminal case has the burden of producing the evidence necessary to prove guilt beyond a reasonable doubt. Courts must be wary of placing on a criminal defendant any burden of producing witnesses on his behalf. In this case, the defense had a right to force the prosecution to make a decision: to either present its case without evidence of a second identification or to risk placing an unconvincing or possibly uncooperative witness on the stand. This strategic advantage, grounded in due process and reflected in the confrontation clause, was unconstitutionally denied to petitioner by the admission of the hearsay testimony.

■ Failure of the defense to call Primus cannot constitute a waiver of rights under the confrontation clause. In order for a waiver to be effective, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *Accord Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); *Brookhart v. Janis,* 384 U.S. 1, 4–6, 86 S.Ct. 1245, 1246–48, 16 L.Ed.2d 314 (1966). Defendant's failure to call Primus cannot be considered such an intentional relinquishment. Direct examination and cross examination are strategically distinct; a decision to forego one cannot be construed as a waiver of the other.

## C. *Harmless Error*

■ In order for a federal constitutional error to be declared harmless, it must be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The issue is not "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of, [but] ... whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

■ Identification is the crux of this. The prosecution presented one witness who identified Mitchell as that robber. It then bolstered the case through the inadmissible and unconstitutional testimony of the detective, essentially turning a one-witness case into a two-witness case.

The defense presented two witnesses who said that Mitchell was not one of the perpetrators. The jury deliberated for some time and on two occasions indicated that they did not believe that they would be able to reach a verdict. The case was a close one, both in the eyes of the jury, and on the record. Inclusion of the improper

testimony could very well have contributed to the result. The constitutional error was not harmless.

### III. CONCLUSION

The writ of habeas corpus must issue. Defendant shall be released unless a retrial is begun within sixty days of completion of all appeals from this judgment.