COMMONWEALTH vs. JAMES M. KATER.

Middlesex. March 3, 1992. - June 9, 1992.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ

*Hypnosis. Evidence*, Identification of inanimate object, Hypnotically aided testimony. *Practice, Criminal*, Stipulation.

In a proceeding on a criminal defendant's pretrial motion to suppress the testimony of certain prosecution witnesses who had been subjected to hypnosis, the judge, following the mandate of *Commonwealth* v. *Kater*, 409 Mass. 433 (1991), properly suppressed from evidence the witnesses' identification of the defendant's automobile, where the record provided no evidentiary basis for the judge to conclude that the witnesses could have identified the automobile prior to hypnosis. [802-804]

In a proceeding on a criminal defendant's pretrial motion to suppress evidence, it was appropriate for the judge, pursuant to a stipulation of the parties, to resolve issues of credibility on the basis of the written record of prior hearings and trials in the case. [804-805]

At the retrial of a murder case, two prosecution witnesses who had been subjected to hypnosis were to be permitted to testify concerning the circumstances of an attempt to identify the defendant's automobile, a subject not discussed during the hypnosis. [805]

At the retrial of a murder case, certain prosecution witnesses who had been subjected to hypnosis were to be permitted to testify, on the basis of their prehypnotic memories, concerning the appearance of an automobile they observed near the place and time the victim was last seen, and they could be questioned concerning similarities or differences between the defendant's automobile and the one they observed. [805-806]

INDICTMENTS found and returned in the Superior Court Department on November 28, 1978.

After review by the Supreme Judicial Court reported in 409 Mass. 433 (1991), a pretrial motion to suppress evidence was heard by *Peter M. Lauriat*, J.

An application for an interlocutory appeal was allowed by *Nolan*, J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him.

*Elspeth B. Cypher*, Assistant District Attorney (*Lance J. Garth*, Special Assistant District Attorney, with her) for the Commonwealth.

*Jonathan Shapiro* (*Patricia Garin* with him) for the defendant.

LYNCH, J. The Commonwealth appeals from the allowance in part of defendant's motion to suppress. This is the fourth appeal in the Commonwealth's prosecution of James M. Kater for the 1978 kidnapping and murder of Mary Lou Arruda. A synopsis of the prior appeals is contained in *Commonwealth* v. *Kater*, 409 Mass. 433, 434-435 (1991) (*Kater III*). There, we reversed the second conviction of the defendant and remanded the case for further proceedings. In preparation for a third trial, the Commonwealth proffered testimony of four hypnotized witnesses (Helena McCoy, Sheila Berry, Albert Santos, and Barbara Lizotte) and set forth its position regarding the admissibility of their testimony. The defendant filed a motion to suppress. After reviewing designated portions of twenty-five volumes of testimony given at the second trial in 1985 and 1986, sixteen volumes of testimony given at the hearing on the defendant's motion to suppress in 1984 and 1985, and four volumes of testimony given at the hearing on the defendant's new trial motion in 1981, and after hearing oral argument on the motion, a Superior Court judge issued findings of fact, rulings of law, and an order, allowing in part and denying in part the defendant's motion. A single justice of this court allowed the Commonwealth's application for leave to appeal from that part of the judge's order allowing the motion to suppress pursuant to Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979), and reserved and reported the matter to the full court. We conclude that there was no error.

The Commonwealth argues that the judge's findings were clearly erroneous because the Commonwealth proved by a preponderance of the evidence that three of the witnesses

were capable of identifying the automobile prior to hypnosis, that the judge did not follow the procedure specified in *Kater III*, and that the trial judge improperly emphasized the credibility of police officers and others rather than assess the impact of hypnosis on the hypnotized witnesses.

1. *The mandate of Kater III and identification of the defendant's automobile.* Because hypnosis was used in this case, the Commonwealth had the burden to prove by a preponderance of the evidence that the witnesses were capable of identifying the defendant's vehicle prior to hypnosis. See *Kater III, supra* at 440. In the absence of clear error, we accept a judge's subsidiary findings, and accord substantial deference to his ultimate findings. *Commonwealth* v. *Monteiro,* 396 Mass. 123, 131 (1985).

Under the mandate of *Kater III* the admissibility of the witnesses' identification of the defendant's automobile depends on separating prehypnotic memory from posthypnotic memory. The judge was charged with weighing the effects of the hypnotic procedures in deciding whether Berry, McCoy, Santos, and Lizotte were capable of identifying the automobile before hypnosis. *Kater III, supra* at 444. The judge set out in his memorandum the prehypnotic memory of each of the witnesses.[1] He ruled, however, that the Commonwealth

---

[1]The witnesses' prehypnotic memories include, and the witnesses may testify, as follows: McCoy may testify (i) to the information recorded in the scratch notes, the incident report, and the wanted poster prepared by Officer Bonaparte; (ii) to the information contained in the report of Detective Goldrick; (iii) with respect to the composites that she prepared; (iv) with respect to the comb; (v) with respect to the examination of automobiles at several Raynham area dealerships; (vi) with respect to the examination of automobiles at the Dodge and Volkswagen dealerships; (vii) with respect to the examination of automobiles in the parking lot in Brockton; and (viii) with respect to photographs that she was shown by the Raynham police prior to September 20, 1978.

Berry may testify (i) to the information contained in Officer Bonaparte's incident report and incident report supplement, and the wanted poster prepared by him; (ii) with respect to her blouse; (iii) with respect to the examination of automobiles at several Raynham area dealerships; (iv) with respect to the examination of automobiles at the Dodge and Volkswagen

did not prove by a preponderance of the evidence that the hypnotized witnesses could have identified the automobile prior to hypnosis because there was no evidence before him of their prehypnotic memories other than that which had been recorded and was before this court in *Kater III*.[2]

In spite of the judge's finding that during hypnosis no questions were asked nor photographs exhibited concerning the identity of the defendant's automobile, he nevertheless concluded that "since it is impossible for the court to assess the extent of hypnosis on the witnesses' memories, the court cannot conclude that McCoy or Berry had an independent prehypnotic memory of the events of September 8, 1978 sufficient to satisfy the Commonwealth's burden of showing that their identification of Kater's automobile at the next trial would be proper."

---

dealerships; and (v) with respect to the examination of vehicles in the parking lot in Brockton.

Santos may testify to the information contained in his seven-page written statement to Officer Jordan.

Lizotte may testify (i) to the information contained in Officer Mello's police report; (ii) to the information contained in Officer Goldrick's police report; (iii) with respect to the composite she prepared (which composite is admissible); (iv) to the information contained in Officer Jordan's police report; (v) with respect to the examination of automobiles at the Dodge and Volkswagen dealerships; and to photographs of individuals that she was shown by the Raynham police.

[2]The judge found that McCoy and Berry did not describe any distinguishing features or details of the defendant's vehicle; their prehypnotic descriptions were too general to substantiate any positive identification; and they, in fact, had not identified the defendant's automobile prior to hypnosis. The judge noted, however, that it did not appear from the record that either McCoy or Berry was shown or asked to identify the defendant's vehicle, either in person or in a photograph before either of their hypnosis sessions; no evidence in the record existed that McCoy's or Berry's identification of Kater's vehicle was the subject of inquiry in the course of their hypnosis sessions; and no evidence existed that the police presented any description or photographs of Kater's vehicle to either McCoy or Berry during their hypnosis sessions. Santos did not describe any distinguishing features or characteristics which resembled the defendant's vehicle and did not identify the defendant's vehicle prior to hypnosis. Lizotte has never made an identification of the defendant's vehicle.

In effect, the judge ruled that the witnesses did not identify the automobile prior to hypnosis; that prior to hypnosis their descriptions of the automobile were not specific enough to indicate an ability to identify the automobile; that no new credible evidence was introduced tending to show the extent of their prehypnosis memories; and, therefore, he had no evidentiary basis to conclude that they could have identified the automobile prior to hypnosis. We agree. The judge followed the mandate of *Kater III*. That other evidence exists tending to show that the defendant's automobile was in the vicinity of the crime scene at critical times, if properly admissible, certainly adds to the Commonwealth's case and strengthens the inference that the defendant's vehicle was the one that the witnesses observed. It does not, however, add to, or corroborate, the extent of the witnesses' prehypnotic memory.

2. *Credibility.* The Commonwealth argues that the judge improperly emphasized the credibility of police officers and others rather than assess the impact of hypnosis on the hypnotized witnesses. When we remanded the case for further proceedings to determine the witnesses' prehypnotic memory, it appeared likely that additional testimony would be required. The judge noted, however, that

> "[r]ather than have the trial court hold a further evidentiary hearing, the parties have stipulated that the court may decide the defendant's motion to suppress the testimony of the hypnotized witnesses on the basis of testimony given and exhibits marked at the prior hearings and trials in this case . . . the court credits certain of the testimony of the witnesses and discredits other testimony that the witnesses have given. [*]

---

"[*] In response to the court's inquiry during the hearing on this motion, both the Commonwealth and the defendant agreed that the decisions by the Supreme Judicial Court in *Kater* I, II and III require the trial court to assess the credibility of the witnesses in determining whether the proffered testimony of the four hypnotized witnesses was based on their pre-hypnotic memories."

Since the Commonwealth agreed, and repeated that agreement at oral argument, that the judge could make his determinations based on the record submitted, the Commonwealth cannot now complain that the judge made credibility determinations on the basis of the written record. Because it was not necessary, in this instance, for the judge to hear witnesses in order for him to resolve credibility issues, nothing remains of the Commonwealth's argument. Evidence the judge did not believe could not be used to tip the preponderance of the evidence balance in favor of the Commonwealth.

3. The Commonwealth raises additional arguments concerning information which it is unsure is admissible.

(a) *Brockton parking lot.* The Commonwealth asserts that, during the retrial in 1985, McCoy and Berry testified that they identified the defendant's automobile in a parking lot in Brockton on September 19, 1978. The defendant argues that, although McCoy and Berry did so testify during the retrial hearing, during a hearing in 1981, McCoy testified that she had not identified the automobile, and Berry testified that she had never said it was the car she had seen on Dean Street. An officer also testified, in 1984 and at the retrial in 1985, that neither McCoy nor Berry had identified the car in the Brockton parking lot. The judge stated, "McCoy and Berry may also testify at the next trial about their examination of vehicles in the parking lot in Brockton. The vehicles that they saw in that parking lot were not the subject of or discussed during their hypnosis sessions." Therefore, although McCoy and Berry may not identify the defendant's vehicle, see *supra*, other testimony concerning the circumstances of what occurred during the attempt to identify the vehicle is not excluded because the attempt to identify the vehicle was not discussed during the hypnosis.

(b) *Appearance of automobile.* The Commonwealth argues that the witnesses should be able to testify as to whether certain characteristics of the defendant's automobile are consistent with those of the automobile they saw on Dean Street. Since the witnesses may describe the car, based on their prehypnotic memories (see *supra*), the witnesses can also be

asked, based on that testimony, whether there are any similarities or differences between the defendant's automobile and the one they observed at the scene. If the witnesses respond appropriately, it would then be open to the Commonwealth to use that testimony in arguing that the witnesses' descriptions are consistent with the actual appearance of the defendant's automobile.

(c) *Other matters.* The Commonwealth argues that the judge's findings do not address (a) McCoy's testimony as to the appearance of the defendant, or (b) the composite prepared by Berry. We decline to rule on these matters absent a decision in the Superior Court on motions in limine or to suppress.

The order allowing in part and denying in part the defendant's motion to suppress is affirmed.

*So ordered.*