COMMONWEALTH *vs.* JOHN D. KIRK.

No. 94-P-1499.

Norfolk. May 15, 1995. - September 7, 1995.

Present: DREBEN, GILLERMAN, & IRELAND, JJ.

*Evidence*, Identity, Spontaneous utterance, Judicial notice, Hearsay, Police
report, Testimony of third party respecting identification. *Constitu-
tional Law*, Confrontation of witnesses, Double jeopardy. *Practice,
Criminal*, Double jeopardy.

At the trial of a complaint for assault and battery, the judge did not abuse
his discretion in admitting as a spontaneous utterance certain testimony
of what the victim had said, where there were sufficient indicia of relia-
bility. [227-228]
Evidence at the trial of a criminal case was not competent to establish the
identity of the person who assaulted the victim where it consisted solely
of extrajudicial statements in an affidavit in support of a complaint
under G. L. c. 209A, § 4, for protection from abuse: the defendant's
conviction was in violation of the confrontation clauses of the Sixth
Amendment to the United States Constitution and art. 12 of the Mas-
sachusetts Declaration of Rights and the matter was remanded for a
new trial. [228-233]

COMPLAINT received and sworn to in the Dedham Division
of the District Court Department on October 6, 1993.

On appeal to the jury session of that court, the case was
heard by *Paul F. X. Moriarty*, J.

*Gregory V. St. Cyr* for the defendant.

*Heather M. Kelley*, Assistant District Attorney, for the
Commonwealth.

GILLERMAN, J. The defendant appeals from his conviction
of assault and battery, G. L. c. 265, § 13A, after a jury-
waived trial in the jury session of the Dedham District
Court. He claims the judge erred in denying his motion for a
required finding of not guilty at the close of the Common-
wealth's case. After viewing the evidence in the light most
favorable to the Commonwealth, but disregarding evidence

we decide was erroneously admitted at trial, we conclude that no rational trier of fact could have found an essential element of the crime charged — the identity of the victim's assailant — beyond a reasonable doubt, see *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979), and, therefore, we reverse the judgment.

The judge could have found the following facts on the Commonwealth's evidence. On October 5, 1993, about 4:15 P.M., John Burke[1] was driving on East Hoyle Street in Norwood when he came upon a car parked perpendicular to the sidewalk in an area where cars are usually parked parallel to the sidewalk. Both doors to the automobile were open. The victim, Kathleen Whalen, was standing on the sidewalk in front of the parked car. She was holding one hand with her other hand. She was crying, very upset, and very dishevelled. Burke stopped his car, and asked Whalen what had happened, in response to which she "just came out — she came out and blurted out the statement that 'My boyfriend just beat me up.'" Burke saw that Whalen had puffy eyes, "she had been crying for some time. Her face was red . . . and she was very frightened." Whalen told Burke that "her boyfriend had grabbed her wrist, and that she had had a previous injury, and she said he was aware of it, and had hurt her in that manner." Burke asked her if she wanted to go to the hospital; she declined. Burke then asked her if she would like to go to the police station. She said she would. Whalen, in her own car, followed Burke to the police station. Up to this point, Whalen had not identified her "boyfriend."

About fifteen minutes had elapsed between the time Burke first saw Whalen and the time they arrived at the police station. Burke helped Whalen into the police station, gave the police his name and phone number, and left.

---

[1] The testimony of John Burke was introduced during a hearing on the defendant's motion in limine held immediately prior to trial. The purpose of the hearing was to determine whether certain statements made by the victim came within the spontaneous exclamation exception to the hearsay rule. At the conclusion of the hearing on the motion, the judge ruled that the statements were admissible. The transcript of the hearing on the motion, by agreement, was subsequently incorporated into the trial record.

Officer David Eysie was at the Norwood police station when Whalen arrived. He saw that Whalen was "teary-eyed, and I also observed her left wrist to be red and swollen . . . she was crying on-and-off and she was frightened." Officer Eysie, together with Lieutenant King, spoke to Whalen in the conference room. Whalen later signed a complaint for protection from abuse, see G. L. c. 209A, § 4, and an affidavit in support of the complaint. The affidavit described the assault and battery, and named the defendant in the accompanying complaint as her assailant. Lieutenant King completed the information required by the court's form of a temporary order (the 209A order) and, with the papers in hand, went to his office and called a judge. The 209A order was signed by a judge,[2] following which Officers Eysie, Finch, and Brown went to the defendant's apartment and, with some difficulty, arrested the defendant on the charge brought in this case. The defendant was brought to the police station where he was served with the 209A order.

Whalen did not testify at the trial. Her statements to Burke were admitted as spontaneous exclamations. The judge ruled, however, that Whalen's statements to Officer Eysie at the police station did not come within that exception. Over the defendant's objection, Whalen's complaint, her supporting affidavit, and the 209A order, including the return of service upon the defendant, were admitted in evidence as one exhibit. The Commonwealth's stated purpose in offering the documents was to provide the element missing from Whalen's statement to Burke — the identity of her "boyfriend." Without competent evidence identifying the defendant as Whalen's boyfriend, the Commonwealth could not prevail.

*Discussion.* The judge did not abuse his discretion in ruling that Burke's testimony of what Whalen said to him was admissible as a spontaneous exclamation. When Burke came upon Whalen, the positioning of her car and her physical ap-

---

[2]The 209A order required the defendant not to abuse the plaintiff, not to contact the plaintiff in any manner, and to stay at least 200 yards away from her.

pearance bespoke someone who was frightened and in turmoil because of a recent event. Here, as in *Commonwealth* v. *Fuller*, 399 Mass. 678, 683 (1987), "the judge acted within his discretion in determining that the statements were made in circumstances which reasonably negated premeditation and were sufficiently proximate to the event so as to be admissible as spontaneous utterances." Contrast *Commonwealth* v. *Joubert*, 38 Mass. App. Ct. 943, 945 (1995), where there were insufficient indicia of reliability. See Liacos, Massachusetts Evidence § 8.4.1 (6th ed. 1994).

Whalen's statement to Burke, however, did not identify the defendant, or anyone else, as her boyfriend. Thus, the pivotal question at the trial was whether Whalen's affidavit and the 209A order were competent to identify the defendant as the "boyfriend" referred to in Whalen's statement to Burke.

Whalen's affidavit, which asserts that the defendant physically abused her, is hearsay, and the Commonwealth concedes this to be so. To the extent that the affidavit contains assertions that are merely cumulative of Whalen's statements to Burke, which were admissible, the point is of no consequence. What is of consequence is whether those statements in Whalen's affidavit which identify the defendant as her assailant, and the ensuing service of the 209A order upon him, provided competent evidence for the judge to find that the defendant was Whalen's boyfriend. We think not.

The Commonwealth argues, without citation to authority, that the judge could properly consider the affidavit and 209A order for the limited purpose of showing that the defendant was the "boyfriend" who assaulted her. Given that the identity of the "boyfriend" was the live issue at the trial, and that evidence that the defendant was the boyfriend was essential for his conviction, the use of the affidavit to resolve the identification issue would mean that the affidavit would be used, impermissibly, for the truth of the matter asserted therein.

The Commonwealth also argues that the 209A order was admissible by way of judicial notice (which the judge *may* have taken, although the record is not entirely clear), as well

as under the official records exception to the hearsay rule. Again, the purpose of the evidence was to resolve the factual issue of the assailant's identity, but judicial notice, which is ordinarily reserved for matters of common knowledge and "matters verifiable by authoritative sources,"[3] cannot be taken of material factual issues that can only be decided by the fact finder on competent evidence. *Commonwealth* v. *Kingsbury*, 378 Mass. 751, 754-755 (1979).

Nor is the official records exception to the hearsay rule available to the Commonwealth. The identification of the defendant in the 209A order is merely a replication of Whalen's assertion in her affidavit that the defendant was the abuser, and it cannot be regarded as a record of a "primary fact made by a public officer in the performance of official duty," as required by the rule. See Liacos, Massachusetts Evidence § 8.13.1, at 504.

Similarly, Officer Eysie's testimony regarding the service of the 209A order upon the defendant, while not hearsay, provides no help to the Commonwealth. Without the admissibility of the antecedent information in Whalen's affidavit and the accompanying complaint in which Whalen names the defendant as her abuser, evidence of the service of the 209A order upon the defendant is relevant only upon the theory that the judge would be entitled to infer that service was made upon the defendant because Whalen had identified him in her affidavit and complaint. In a remarkably similar case,

---

[3]While the judge, or this court, may take judicial notice of the records and files of the court in the same case or in ancillary proceedings, see Liacos, Massachusetts Evidence § 2.8.1, at 43, such records ordinarily may not be used for substantive purposes. Thus, in *Brookline* v. *Goldstein*, 388 Mass. 443 (1983), the Supreme Judicial Court considered the pleadings in other cases which had been submitted to the judge "*solely* to discover the nature of the claims asserted" (emphasis added). *Id.* at 447 n.5.

Matters of fact, to be noticed, will generally be limited to what is "indisputably true." Liacos, Massachusetts Evidence § 2.6, at 39. We are not aware of any case where a trial judge or an appellate court has taken judicial notice of an unsupported extrajudicial statement which provides the critical evidence of the identification of the defendant in a criminal case. Cases cited by the Commonwealth, *Andrews, petitioner*, 368 Mass. 468, 476 (1975), and *Matter of Welansky*, 319 Mass. 205, 210 (1946), are not apposite.

*Mitchell* v. *Hoke*, 745 F. Supp. 874, 876 (E.D.N.Y. 1990),[4] Justice Jack B. Weinstein wrote that such reasoning presents "a classic example of indirect hearsay." Paraphrasing Judge Weinstein: the acts of Officer Eysie (serving the 209A order) leads by direct inference to the precise words of Whalen. Since Whalen's credibility must be evaluated to determine the probative force of this line of identification proof, the hearsay rule applies. *Ibid.* This analysis is hardly new. See *Commonwealth* v. *Fagan*, 108 Mass. 471, 472 (1871). See also Liacos, Massachusetts Evidence § 8.1, at 436 ("The principal reason for the hearsay rule is that extrajudicial statements, unlike statements in court, are not immediately tested by cross-examination"). Compare *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 796 (1985) (Commonwealth may not bootstrap into a category of substantive evidence extrajudicial identification of a photo where witness not asked to confirm the identification at the trial).

To sum up, the Commonwealth fails to refer us to any authority, and we know of none, which would permit the judge to consider the prior identification evidence appearing only in Whalen's extrajudicial affidavit, absent any supporting testimony, as competent evidence of the required identification of Whalen's "boyfriend."[5] While it is true that an extrajudicial

---

[4]In *Mitchell* v. *Hoke*, a police detective testified that the absent declarant picked someone out of a pretrial lineup, and that the defendant was arrested as a result.

[5]See *Commonwealth* v. *Weichell*, 390 Mass. 62, 71-72 (1983) ("Under the Federal Rules of Evidence and the Proposed Massachusetts Rules of Evidence [1980], a statement of prior identification is not hearsay if made by a witness who testifies at trial and is subject to cross-examination concerning it. Fed.R.Evid. 801[d][1][C]. Proposed Mass.R.Evid. 901[d][1][C] [1980]. Paragraph C is consistent with Massachusetts law giving substantive effect to prior identification.") Proposed rule 801(d)(1)(C) provides: A statement is not hearsay if — (1) "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (C) one of identification of a person after perceiving him. . . ." Compare *Commonwealth* v. *Kater*, 409 Mass. 433, 447 (1991), *S.C.*, 412 Mass. 800 (1992) ("[W]here a witness does not acknowledge a prior extrajudicial identification, such identification cannot be proved by the testimony of a person who observed the identification, and cannot be admitted for its probative value. *Commonwealth* v. *Daye*, 393 Mass. 55, 61-62 [1984]").

identification may, in certain circumstances, be admitted as probative evidence, see *Commonwealth* v. *Daye*, 393 Mass. 55, 61 (1984); Liacos, Massachusetts Evidence § 10.1, at 609, admissibility in such circumstances continues only so long as the defendant's due process and confrontation rights are satisfied.[6] *Commonwealth* v. *Torres*, 367 Mass. 737, 739 & n.2 (1975). *Commonwealth* v. *Swenson*, 368 Mass. 268, 273 n.3 (1975). *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 408-409 (1978).

Here, the defendant was identified — and later charged and convicted — as Whalen's assailant solely by means of an extrajudicial identification made by an available witness who did not "confront" the defendant, did not testify, and was not subject to cross-examination.[7] The defendant's conviction was in violation of the Sixth Amendment to the United States Constitution. See *California* v. *Green*, 399 U.S. 149, 193 (1970) ("This Court has already explicitly held in *Douglas* v. *Alabama*, 380 U.S. 415, 419-420 [1965], that the Confrontation Clause forbids the substantive use at trial of a prior extrajudicial statement, when the declarant . . . [is] unwilling to testify about the events with which his prior statement dealt . . . . [The defendant's] inability to cross-examine [the absent declarant] as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause"). The conviction also violated art. 12 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 544 (1988) ("[W]e

---

[6]The issue of the confrontation clause was not raised below, and we requested additional briefs because of the importance of the issue. See *Commonwealth* v. *Trowbridge*, 36 Mass. App. Ct. 734, 746 & n.11, *S.C.*, 418 Mass. 1107 (1994).

[7]The Commonwealth's brief is careful to describe Whalen as an "absent" witness, not an "unavailable" witness. The trial transcript is silent as to the circumstances of Whalen's absence from the trial. However, at the sentencing hearing *following* the trial, the Commonwealth represented to the court that Whalen "was summonsed today" by the Commonwealth, and that she did not appear in court. There is no reference in the record to a return of service. The Commonwealth also represented to the court that Whalen "did leave a message . . . to the effect that she didn't want to go forward with the case."

have never interpreted art. 12 as permitting introduction of an available witness's testimony outside a defendant's presence. Indeed, an unbroken chain of decisions mandates the opposite conclusion"); *Commonwealth* v. *Johnson*, 417 Mass. 498, 503 (1994) ("Unlike the Sixth Amendment, however, art. 12 contains an indispensable element of face-to-face confrontation of witnesses appearing at trial"). *Bergstrom* also emphasizes the second element of the confrontation clause — that "confrontation requires cross-examination in addition to a face-to-face meeting . . . . [C]ross-examination reinforces the importance of physical confrontation." *Commonwealth* v. *Bergstrom*, 402 Mass. at 542 (citations omitted).

We recognize that the right to confront witnesses is not absolute. See *White* v. *Illinois*, 502 U.S. 346, 357 (1992) (confrontation clause of the Sixth Amendment not violated where the proffered hearsay comes within a firmly rooted exception to the hearsay rule, such as spontaneous exclamations); *Commonwealth* v. *Crawford*, 417 Mass. 358, 364 (1994). But here, the Commonwealth presented no evidence that Whalen was unavailable, see note 7, *supra*; see also *Commonwealth* v. *Bohannon*, 385 Mass. 733, 744 (1982); *Commonwealth* v. *Colin C.*, 419 Mass. 54, 63 (1994) ("[t]he prosecution bears the burden of showing the necessity for admitting the out-of-court statement by establishing the declarant's unavailability to testify during the trial"), and, as we have seen, no "firmly rooted" exception to the hearsay rule is available as to the critical identification issue. In these circumstances, the defendant's right of confrontation is paramount. See *Commonwealth* v. *Bergstrom*, 402 Mass. at 545-546; *Opinion of the Justices*, 406 Mass. 1201, 1209-1210 (1989); *Commonwealth* v. *Colin C.*, 419 Mass. at 63. See also *Commonwealth* v. *Bohannon*, 385 Mass. at 741 (confrontation right extends beyond contours of the hearsay rule).

The defendant, without justification, was deprived of the right of cross-examination of Whalen and the right to a face-to-face confrontation. The judgment must be reversed and the verdict set aside. However, the conclusion we reach does

not bar the retrial of the case. Since the evidence admitted at trial was sufficient to send the case to the jury, but was insufficient to send the case to the jury if the complaint, affidavit, and 209A order are disregarded, double jeopardy principles do not bar a retrial. See Kater v. Commonwealth, 421 Mass. 17, 18 (1995). See also Lockhart v. Nelson, 488 U.S. 33, 40-41 (1988); Commonwealth v. Kater, 409 Mass. 443, 445 (1991), S.C., 412 Mass. 800 (1992) (" '[W]e agree with those cases which hold that the double jeopardy principle does not automatically bar retrial "where an insufficiency of evidence appeared only when material held on appellate review to have been erroneously admitted was notionally removed from the case" ' ").

*So ordered.*