NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617)
557-1030; SJCReporter@sjc.state.ma.us

19-P-326                                           Appeals Court

COMMONWEALTH  vs.  JOHN YANG.

No. 19-P-326.

Worcester.     May 11, 2020. - September 17, 2020.

Present:  Massing, Shin, & Ditkoff, JJ.


Burning a Dwelling House.  Malicious Explosion.  Evidence,
     Photograph, Hearsay, Identification.  Identification.
     Practice, Criminal, Identification of defendant in
     courtroom.



     Indictments found and returned in the Superior Court
Department on October 24, 2013.

     The cases were tried before Richard T. Tucker, J.


     Andrew W. Piltser Cowan for the defendant.
     Michelle R. King, Assistant District Attorney, for the
Commonwealth.


     SHIN, J.  A jury convicted the defendant of arson of a

dwelling, see G. L. c. 266, § 1, and malicious explosion, see

G. L. c. 266, § 102B.  The key issue at trial was the identity

of the drug dealer known as "Chi," who recruited two men to set

fire to a house.  On appeal the defendant argues that the judge

erred by admitting an in-court identification, hearsay evidence, and lay opinion testimony.  We agree and conclude that these errors, taken together, created a substantial risk of a miscarriage of justice.  Therefore, we reverse.

Background.  In the months preceding July 2013, Kyle DeWispelaere and Joseph Brown frequently purchased drugs from a dealer they knew only as "Chi."[1]  The men arranged transactions with Chi via telephone and then typically went to an apartment located on Forest Street in Fitchburg for the exchanges.  They understood that this apartment, which had a mailbox outside that read "Yangs," was the home of Chi's brother.  During the brief transactions, DeWispelaere and Brown focused their attention on the drugs and money exchanged rather than on Chi's appearance. DeWispelaere described Chi as a five-foot, six-inch tall,[2] stocky Asian man, with a ponytail and otherwise mostly shaved head and a dragon tattoo on his left arm.  Brown described Chi as short and Asian with tattoos.  Although the two men often dealt with Chi, they also purchased drugs from other dealers, including Chi's nephew.

---

[1] Both DeWispelaere and Brown testified under cooperation agreements.

[2] DeWispelaere acknowledged at trial that the defendant was not this height.

When the men contacted Chi for drugs in early July 2013, Chi stated that he did not have any to sell because his roommate, Shaun Hibbard, stole his drugs, guns, and money. Chi, seeking to retaliate, spoke to Brown about finding someone to "firebomb" Hibbard's house. Brown discussed this with DeWispelaere and, after negotiating with Chi, agreed to burn Hibbard's house in exchange for one thousand dollars' worth of heroin. A few nights later, Brown and DeWispelaere traveled to Fitchburg with a third man and drove by the address provided by Chi.[3] Chi sent a text message to Brown, instructing him to "[g]et it done, in flames." The men assembled Molotov cocktails, which are glass containers filled with flammable liquid, rags, and wicks, and then lit and threw them at the house. Police stopped the three men in their car soon thereafter.

Discussion. 1. In-court identification. In October 2013 police showed DeWispelaere eight photographs. Initially, DeWispelaere did not select any of the photographs as depicting the drug dealer he knew as Chi, but, when he looked a second time, he selected a photograph of the defendant. He stated that

---

[3] That address was home to Hibbard's estranged wife. The wife testified that Hibbard had moved out and was living with a roommate in a different apartment. The defendant's fingerprints were later discovered at that apartment in Leominster.

he was "[eighty] percent sure" about his identification, explaining that "[t]he hair appeared to be different than [he] remembered it."[4]  At trial, however, when DeWispelaere was asked to make an in-court identification, he unequivocally identified the defendant as the man he knew as Chi.  The defendant now argues that DeWispelaere should not have been permitted to make the in-court identification because his out-of-court identification was equivocal.[5]  We agree.

If an eyewitness "made something less than an unequivocal positive identification of the defendant" during an out-of-court identification procedure, that witness may not make an in-court identification without "good reason."  Commonwealth v. Collins, 470 Mass. 255, 265 (2014).  See Mass. G. Evid. § 1112(c)(2)(A) (2020).  An unequivocal positive identification occurs if the witness "identifies the defendant as the perpetrator, such that

---

[4] DeWispelaere testified that "the hair has a lot to do with" how he perceives someone's appearance.

[5] We reject the Commonwealth's assertion that the parties stipulated to the in-court identification, as that is not borne out by the record.  The record does establish, however, that the defendant did not preserve the issue.  Although the defendant filed a "motion to exclude in-court identification," his arguments to the judge focused on Brown (who never made a pretrial identification), and the defendant failed to object to DeWispelaere's in-court identification during trial.

the statement of identification is clear and free from doubt." Commonwealth v. Dew, 478 Mass. 304, 315 (2017).[6]

Here, DeWispelaere should not have been permitted to make an in-court identification because his prior identification was not unequivocal. DeWispelaere's statement that he was "[eighty] percent sure" was not one that was "clear and free from doubt." Dew, 478 Mass. at 315. Also, it was only after DeWispelaere saw the defendant's photograph a second time that he selected it. In these circumstances we agree with the defendant that DeWispelaere's out-of-court identification was not unequivocal. Indeed, the Commonwealth does not argue otherwise in its brief.

Nor did good reason justify admission of the in-court identification, and again the Commonwealth does not so argue. Even where the witness was familiar with the defendant prior to the commission of the crime, "good reason will not often exist where a witness has earlier failed to make a positive identification. In these circumstances, for an in-court showup to be admissible, it would need to be justified by some other 'good reason' for permitting a suggestive identification procedure, which usually would require a showing that the in-court identification is more reliable than the witness's earlier

---

[6] The trial judge did not have the benefit of the Dew opinion.

failure to make a positive identification and that it poses little risk of misidentification despite its suggestiveness." Collins, 470 Mass. at 265.  There is no basis here on which to conclude that DeWispelaere's in-court identification was more reliable than his equivocal out-of-court identification.  This is not a case, for instance, where DeWispelaere "only failed to identify the defendant in the earlier identification procedure because of fear or an unwillingness to cooperate with the police at the time."  Id. at 265 n.16.  Moreover, the in-court identification was highly "material to a determination of [the defendant's] guilt or innocence" and did not "serv[e] merely to inform the jury that 'the person sitting in the court room is the person whose conduct is at issue.'"  Dew, 478 Mass. at 313, quoting Commonwealth v. Crayton, 470 Mass. 228, 242 (2014).  Thus, as no good reason existed for the in-court identification, it should not have been admitted.

2.  Hearsay.  When police executed a search warrant at the Forest Street apartment, they found a photograph that depicted a partially clothed woman with a man resembling the defendant.  Below the photograph was an initialed note that read, "Chi -- keep it nasty."  The defendant moved in limine to exclude the photograph or, in the alternative, to redact the inscription, arguing that the combination of the two constituted inadmissible hearsay.  The Commonwealth countered that the evidence was being

offered for the nonhearsay purpose of showing that the defendant "held himself out to be Chi." In so arguing, the Commonwealth asserted that the photograph was "a gift [the defendant] got from a strip club" and that, inferably, the woman in the photograph wrote the inscription. Over the defendant's objection, the judge admitted the photograph unredacted, finding that it was offered for the nonhearsay purpose of showing that "[the defendant] held himself . . . out as Chi" and, in particular, that the woman "knew [the defendant] as Chi." The judge also appeared to find that the unredacted photograph was admissible to show the defendant's connection to the apartment.

Absent an applicable exception, "the rule against hearsay prohibits the admission of out-of-court statements offered to prove the truth of the matter asserted." Commonwealth v. Wardsworth, 482 Mass. 454, 462 (2019). Statements for hearsay purposes include a person's oral or written assertions, as well as "nonverbal conduct, if the person intended it as an assertion." Mass. G. Evid. § 801(a) (2020). See Commonwealth v. Baker, 20 Mass. App. Ct. 926, 928 n.3 (1985).

The defendant argues that the inscribed photograph was offered to prove the truth of the implied assertion that the man in the photograph, who appeared to be the defendant, was known by the name Chi. We agree that the Commonwealth offered the evidence for this purpose, as made clear by its arguments to the

judge and how it used the evidence at trial. When introducing the photograph, the Commonwealth first asked the witness, "[T]his appears to be a photograph with writing on the bottom that says, 'Chi, keep it nasty,' with a signature?" The Commonwealth then connected the inscription to the defendant by asking, "Does that appear to be a photograph of John Yang?" It drew the same connection in closing argument, suggesting that the person who wrote the inscription gave the photograph to the defendant as a gift:

> "And more importantly, what did the police find inside 45 Forest Street? A photo of the defendant signed -- a gift, if you would -- Chi, keep it nasty. And whatever theory that was just advanced as to someone hopped in and signed it, you all come into this courtroom with life experience and common sense. And I'd ask you if that argument makes any sense to any of you."

The Commonwealth concluded by arguing that "the photographs . . . confirm" "[t]he identification of Chi as John Yang."

The plain import of the Commonwealth's argument was that the jury should consider the photograph and inscription as evidence that the defendant and Chi were one and the same. Indeed, the Commonwealth offered no other reason for its insistence on presenting the photograph and inscription together. See Commonwealth v. Ashman, 430 Mass. 736, 742 n.5 (2000). As the Commonwealth acknowledges, "[t]he only issue at trial was whether the defendant was the individual known as 'Chi' who enlisted DeWispelaere and Brown to firebomb Shaun

Hibbard's home." We therefore agree with the defendant that the Commonwealth impermissibly used the evidence to prove the truth of an implied assertion that the defendant was, in fact, Chi.[7] See id. at 742-743 (witnesses' testimony that they contacted police in response to telephone call from victim was hearsay because inference was that victim told them that defendant abused her); Commonwealth v. Sheline, 391 Mass. 279, 285-286 (1984) (averment in laboratory certificate that defendant was "aka Howie Tuna" was hearsay); Commonwealth v. DeJesus, 87 Mass. App. Ct. 198, 201-202 (2015) (police checkmarks on currency photocopies were hearsay because offered to show that bills matched those in defendant's pocket); Commonwealth v. Ramirez, 55 Mass. App. Ct. 224, 227-228 (2002) (business cards in defendant's possession listing New York addresses were hearsay because offered to show connection to New York); Commonwealth v. Kirk, 39 Mass. App. Ct. 225, 228 (1995) ("Given that the identity of the [victim's] 'boyfriend' was the live issue at the trial, and that evidence that the defendant was the boyfriend was essential for his conviction, the use of the [G. L. c. 209A] affidavit to resolve the identification issue would mean that

---

[7] Because the statement was not testimonial, however, we reject the defendant's argument that admitting the evidence violated his right to confrontation. See Commonwealth v. Imbert, 479 Mass. 575, 580 (2018).

the affidavit would be used, impermissibly, for the truth of the matter asserted therein").

While not disputing that it used the photograph and inscription to prove that the defendant was the same person as Chi, the Commonwealth argues that the evidence was nonetheless offered for a nonhearsay purpose -- to show that "the defendant held himself out as 'Chi.'"  In so arguing, the Commonwealth relies, as the trial judge did, on Commonwealth v. Koney, 421 Mass. 295 (1995).  The charge at issue in Koney was operation of a motor vehicle after revocation, which required the Commonwealth to prove that the defendant received notice of the revocation.  See id. at 302-304.  To that end, the Commonwealth introduced revocation notices sent to one Roger A. Koney and a copy of an identification card for Roger A. Koney that the defendant produced to an officer.  See id. at 302.  The card contained a photograph and the same address and identifying information listed on the revocation notices.  See id.  The court held that the card was not hearsay because the Commonwealth did not offer it "to prove the defendant actually was named Roger A. Koney and actually lived at" the identified address, but for the more limited purpose of showing that he held himself out as such.  Id. at 303.  This had probative value because "[p]roper mailing of a letter is prima facie evidence of receipt by the addressee."  Id. at 303-304.

Koney is inapposite for several reasons. First, as discussed above, the Commonwealth in this case offered the evidence to show that the defendant was actually the person known as Chi who ordered the firebombing. Second, unlike in Koney, the photograph was not "produced by the defendant" and therefore was not "reliable evidence from which the jury could find that the defendant held himself out to be" Chi. Koney, 421 Mass. at 303. Third, and relatedly, here the suggestion that the defendant held himself out as Chi necessarily depends on the truth of the implied assertion -- that is, that the man in the photograph was known to the declarant as Chi. Thus, because the declarant's "credibility must be evaluated to determine the probative force of this line of identification proof, the hearsay rule applies." Kirk, 39 Mass. App. Ct. at 230.

We also reject the Commonwealth's contention that the evidence was admissible to show the defendant's connection to the Forest Street apartment. This purpose would have been equally served by admitting the photograph without the inscription, as the defendant had proposed. A photograph of the defendant found in the apartment would alone have shown his connection to it. See Sheline, 391 Mass. at 286 (statement that defendant was "aka Howie Tuna" was "unnecessary to the integrity of the [chemist's] certificate"). But the Commonwealth insisted on presenting the photograph and inscription together, for the

stated purpose of showing that the defendant held himself out as Chi.  This was an impermissible use of the evidence to prove the truth of the matter asserted.

3.  Lay opinion.  At trial a detective testified, without objection, that the man depicted in the photograph appeared to be the defendant.  The defendant argues that this was improper lay opinion testimony.  Once again, we agree.

A lay witness may opine about the identity of a person depicted in a photograph if the testimony "assist[s] the jurors in making their own independent identification."  Wardsworth, 482 Mass. at 475, quoting Commonwealth v. Pina, 481 Mass. 413, 429 (2019).  See Mass. G. Evid. § 701 (2020).  Such an opinion is generally admissible, therefore, "if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury."  Commonwealth v. Vacher, 469 Mass. 425, 441 (2014), quoting Commonwealth v. Pleas, 49 Mass. App. Ct. 321, 326 (2000).  Here, the evidence did not show that the detective had "any special familiarity with the defendant that the jury lacked" that would assist them in identifying the man in the photograph as the defendant.[8]  Vacher, supra at 442.  See Wardsworth, supra at 476

_____

[8] The Commonwealth points to evidence that the defendant's appearance had changed since the time of his arrest.  Although the defendant's stepbrother testified that the defendant appeared "chubbier" in a photograph taken around the time of his

(improper for officers to testify about identity of person in surveillance video recording where they had no "special insight" into defendant's appearance).  The detective was not in a better position than the jury to make the identification, and so his lay opinion testimony should not have been admitted.

4.  Substantial risk of a miscarriage of justice.  Although the defendant preserved the hearsay issue, he did not object to either the in-court identification or the lay opinion testimony.  We need not decide whether any error individually requires reversal of the convictions, however, because we conclude that the errors, taken together, created a substantial risk of a miscarriage of justice.  See Commonwealth v. Dwyer, 448 Mass. 122, 138 (2006); Commonwealth v. Cancel, 394 Mass. 567, 576 (1985).

All three errors went to the heart of the case: identification.  See Commonwealth v. Mazzone, 55 Mass. App. Ct. 345, 353 (2002) (reversing where "errors all concern[ed] evidence implicating credibility in a trial in which credibility was the only real issue").  DeWispelaere's unequivocal in-court identification was strong direct evidence that the defendant was

_____

arrest, the detective did not testify to this, nor was there evidence that the detective had known the defendant for a long time.  See Wardsworth, 482 Mass. at 475-476.  Cf. Commonwealth v. Vitello, 376 Mass. 426, 458-460 & n.29 (1978).

the drug dealer known as Chi and was not cumulative.  And in closing, the Commonwealth emphasized the unequivocal nature of the in-court identification to minimize DeWispelaere's equivocation during the out-of-court identification, arguing, "When Kyle DeWispelaere took the stand, was he [eighty] percent sure that was the man sitting right there?  No."  Especially in light of the Commonwealth's argument, there is a substantial risk that the jury gave more weight to the suggestive in-court identification, which carried with it an "inflated level of confidence[,] . . . than to the nonsuggestive pretrial identification that yielded something less than a positive identification."  Collins, 470 Mass. at 264.

Likewise, the Commonwealth highlighted the "Chi -- keep it nasty" inscription when it introduced the hearsay evidence and relied on the evidence in closing to argue that the defendant was the same person as Chi.  Given the Commonwealth's presentation, the absence of a limiting instruction, and that identity was the only contested issue at trial, there is a substantial risk that the jury considered the evidence for the truth of the assertion that the man in the photograph (whom they could have found to be the defendant) was Chi.  See Wardsworth, 482 Mass. at 463; Commonwealth v. Randall, 50 Mass. App. Ct. 26, 28 (2000).  And the improper lay opinion testimony added to the prejudice caused by the hearsay error because, although the jury

were able to inspect the photograph for themselves, the detective's opinion brought with it a "greater imprint of authority."  Wardsworth, supra at 477, quoting Pina, 481 Mass. at 430.

The Commonwealth's case without the improperly admitted evidence was not so overwhelming as to overcome the prejudicial effect of the combined errors.  See Commonwealth v. Alphas, 430 Mass. 8, 13 n.6 (1999).  The Commonwealth's case included evidence that the defendant's brother lived at the Forest Street apartment.  The defendant's fingerprints were also found at the apartment in Leominster where Hibbard was living, and Chi told DeWispelaere and Brown that Hibbard was his roommate.  In addition, DeWispelaere chose the defendant's photograph from the photo array and testified that Chi had a dragon tattoo on his left arm; photographs of the defendant's tattoos confirmed that he had one of a dragon on his arm.  To counter this evidence, however, the defendant offered evidence about the prevalence of dragon tattoos among Asian males and presented an alibi defense through the testimony of his stepbrother.  His stepbrother's testimony was partially corroborated by documentary evidence and, if believed, showed that the defendant was in Wisconsin during the summer when Chi sold drugs to DeWispelaere and Brown and recruited them to firebomb the house.

Reviewing the case as a whole, "we have a serious doubt whether the result of the trial might have been different" had the three errors not occurred.  Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).  Because the errors went to the only contested issue, we conclude that their cumulative effect created a substantial risk of a miscarriage of justice. The defendant is therefore entitled to a new trial.

Judgments reversed.

Verdicts set aside.