## COMMONWEALTH *vs.* JOSE RAMIREZ.

No. 00-P-1754.

Hampden. February 6, 2002. - June 14, 2002.

Present: PORADA, LENK, & GREEN, JJ.

*Arrest. Constitutional Law,* Arrest, Admissions and confessions. *Evidence,* Admissions and confessions, Hearsay, Cumulative evidence. *Practice, Criminal,* Argument by prosecutor. *Joint Enterprise.*

No error appeared in a judge's denial of a motion to suppress the defendant's statement to police at the time of his arrest, i.e., giving them a false name, before he had received Miranda warnings, where the evidence did not support the defendant's contention that, because the police knew he had given a false name on a previous occasion, they may well have intended to elicit a false response on the occasion of his arrest, and where the defendant's response of a false name was not directly linked to the charged offense. [226-227]

At a criminal trial, the judge erred in admitting business cards purporting to have issued from businesses in New York and a receipt from a health club listing a New York address seized from the defendant's wallet at the time of his arrest where, because they were offered to support the defendant's connection to New York based on the truth of the assertion that the businesses were located in New York, the business cards and the New York address listed on the receipt were hearsay; however, where the hearsay evidence went to a collateral issue and was cumulative of other evidence submitted on that issue, its admission was not prejudicial error. [227-229]

There was no merit to errors claimed by a criminal defendant that the prosecutor engaged in an improper closing argument, that the evidence was insufficient to support his conviction as a joint venturer, and that the judge should have given a specific unanimity instruction. [229-230]

INDICTMENT found and returned in the Superior Court Department on August 26, 1998.

A pretrial motion to suppress evidence was heard by *Constance M. Sweeney,* J.; the case was tried before *C. Brian McDonald,* J., and a motion for a new trial was heard by him.

*Wendy H. Sibbison* for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

GREEN, J. The defendant appeals from his conviction for trafficking in cocaine as a joint venturer (and the subsequent denial of his motion for a new trial), claiming as errors (i) the denial of his motion to suppress his statement to the police, i.e., giving them a false name, before he had received Miranda warnings; (ii) the admission in evidence of various business cards and other material containing hearsay information; (iii) improper closing argument by the Commonwealth; (iv) insufficiency of the evidence to support his conviction as a joint venturer; and (v) the lack of a specific unanimity instruction. Though we agree that the business cards should not have been allowed in evidence, we conclude that the error was not prejudicial. Since we find no merit in the defendant's other claims of error, we affirm the conviction and the order denying the motion for a new trial.

We summarize the facts that the jury could have found, supplementing the summary as necessary incident to our discussion of each of the defendant's claims.

On May 14, 1998, acting on a tip from an informant, undercover police officers completed a controlled purchase of cocaine from Daniel Rodriguez. By prior arrangement, Rodriguez brought a sample of the drug to an apartment occupied by one of the officers for the officer's inspection. Rodriguez then left the apartment and, after the officer later communicated his desire to proceed with the purchase, returned with eleven ounces of cocaine. The officer delivered $10,000 to Rodriguez, which Rodriguez divided, placing $2,000 in his wallet and $8,000 in his pocket. As Rodriguez left the apartment, the officer radioed other police officers to advise them that the sale was complete; Rodriguez was arrested in the corridor outside the apartment.

On both of Rodriguez's visits to the apartment, he arrived in a tan Toyota automobile driven by the defendant. After dropping Rodriguez off in front of the apartment building, the defendant parked the car, went into the lobby of the building, and waited for Rodriguez. On the radio advice that the sale was complete, an officer arrested the defendant in the lobby.

1. *Motion to suppress.* At the time of his arrest, the defendant was asked his name and responded, falsely, "George Lassu." The officer responded that he knew that the defendant was lying. The defendant contends that his response should have been suppressed, as he had not been given Miranda warnings before he was asked his name.

The request for an arrestee's name generally does not require a Miranda warning because it "fall[s] within a 'routine booking question' exception which exempts from Miranda's coverage questions to secure the 'biographical data necessary to complete booking or pretrial services.' " *Pennsylvania* v. *Muniz*, 496 U.S. 582, 601 (1990). The "routine booking question" exception does not extend, however, to questions designed to elicit an inculpatory response. See *Commonwealth* v. *Woods*, 419 Mass. 366, 373 (1995), citing *Muniz*, 496 U.S. at 602 n.14. See also *Commonwealth* v. *Sheriff*, 425 Mass. 186, 199 (1997) (ordering hearing incident to new trial to assess whether questions asked for purpose of ascertaining whether defendant could understand Miranda warnings were designed to elicit incriminating response).

The defendant argues that, because the police knew he had given a false name on a previous occasion, they may well have intended to elicit a false response on the occasion of his arrest. However, the evidence does not support that contention. The officer testified that he recognized the defendant from a past encounter, and recalled that the defendant had given a false name in that previous encounter. The officer also testified that he could not remember the defendant's name at the time he asked the question. Standing alone, the fact that the questioning officer knew that the defendant had given a false name once before does not support a conclusion that the officer expected him to do so again, and asked the defendant his name for the purpose of using the false name to incriminate him. Cf. *Commonwealth* v. *Torres*, 424 Mass. 792, 798 (1997) ("the mere fact that a police officer may be aware that there is a 'possibility' that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation"), quoting from *United States* v. *Taylor*, 985 F.2d 3, 18 (1st Cir.), cert. denied, 508 U.S. 944 (1993). A defendant's false response

to a routine request for his name on one occasion does not immunize him from similar requests on future occasions.

Moreover, unlike the circumstances present in *Sheriff, supra* (questions designed to test defendant's mental acuity where defendant asserted insanity defense at trial), *Woods, supra* (questions about employment asked on drug arrest), and *Muniz, supra* (defendant unable to give date of his sixth birthday, suggesting mental impairment at time of his arrest for driving while intoxicated), the defendant's response of a false name in the instant case is not directly linked to the charged offense.[1] Cf. *United States* v. *Reyes*, 225 F.3d 71, 77 (1st Cir. 2000). We find no error in the motion judge's denial of the motion to suppress.

2. *Admission of business cards and health club receipt.* At the time of his arrest, police seized the defendant's wallet, which contained several business cards purporting to have issued from businesses in New York, along with a receipt (issued in favor of "George Lassu") from a health club listing a New York address. The defendant's trial counsel objected on hearsay grounds to the admission of both the business cards and the receipt, but was overruled.[2]

Because they were offered to support the defendant's connection to New York based on the truth of the assertion that the businesses are located at the New York addresses listed thereon (or at the least in New York), the business cards should have been excluded as hearsay. The cases cited by the Commonwealth to support admission of the business cards are distinguishable, as the evidence in those cases was used to establish circumstantially a connection between the defendant and another person, rather than on the truth of any statement. See *Commonwealth* v.

---

[1] The inculpatory aspect of the defendant's response was, of course, its possible use as evidence of consciousness of guilt. We note that the defendant expressly withdrew, for tactical reasons, his request for an instruction on consciousness of guilt, and successfully opposed the Commonwealth's request for such an instruction.

[2] The primary evidence of the defendant's guilt came in the form of testimony by the cooperating witness, Rodriguez. Rodriguez testified that the defendant was from New York, and the business cards and receipt tended to corroborate Rodriguez's account in that regard, thereby bolstering his overall credibility.

*Soares*, 384 Mass. 149, 161-162 (1981) (Western Union receipts and telephone records admissible to show relationship between conspirators, but not the transactions recorded thereon); *Commonwealth* v. *Cohen*, 6 Mass. App. Ct. 653, 660 (1978) (correspondence addressed to "Tina Cohen" and seized at defendant's home admissible to show relationship between defendant and "Tina Cohen"). In *Commonwealth* v. *Gonzalez*, 23 Mass. App. Ct. 990, 991 (1987), an envelope addressed to the defendant was held admissible to show that the defendant had some connection with that address, but not to establish that the address was the defendant's exclusive address; the connection between the defendant and the address derived from the fact that the defendant's name appeared with the address on the envelope without regard to the truth or accuracy of the address itself.

For the same reasons, though the health club receipt was admissible for the limited purpose of establishing that the defendant held himself out to be "George Lassu," see, e.g., *Commonwealth* v. *Koney*, 421 Mass. 295, 303 (1995), the New York address listed on the receipt was hearsay.[3]

Having concluded that the business cards should not have been admitted, we consider whether the error requires reversal. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999). As noted above (see note 2, *supra*), the business cards and health club receipt were admitted for the purpose of bolstering Rodriguez's credibility. However, there was a significant body of other evidence corroborative of Rodriguez's credibility, on matters more central to the elements of the charged offense. Because the hearsay evidence went to a collateral issue and was cumulative of other evidence submitted on that issue, we conclude that its admission was not prejudicial error. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 172, 173 (1998).

Rodriguez testified that, to arrange a drug sale, he would page the defendant and the defendant would page him back. The two would then meet at the home of a mutual friend in the Chicopee area, where the defendant would deliver the drugs to

---

[3]We note that defense counsel did not request, and the trial judge did not give, a limiting instruction at the time the health club receipt was admitted in evidence.

Rodriguez for sale. If Rodriguez did not have the money to pay for the drugs delivered by the defendant, the defendant would allow Rodriguez to pay him from the proceeds of the sale itself, after collecting the money from the purchaser. This account was corroborated independently as follows. At the time of their respective arrests, both Rodriguez and the defendant had pagers in their possession. In addition, the interval between the time when the undercover officer and Rodriguez arranged the sale and when the sample was delivered on the following day was consistent with a supplier's travel to Springfield from New York. After transacting the sale, Rodriguez divided the proceeds into two portions, placing $2,000 into his wallet (presumably his share) and $8,000 into his pocket (presumably for delivery to his supplier).

Most significantly, as it relates to his credibility, Rodriguez's identification of the defendant as his supplier was corroborated by two prior consistent statements made before he agreed to cooperate with the prosecution by testifying against the defendant.[4] First, before Rodriguez was aware he was under surveillance, and in response to inquiry by the undercover officer at the time Rodriguez delivered the sample, Rodriguez explained the defendant's presence at the delivery by describing him as his "main man." Rodriguez also identified the defendant as his supplier, and provided other details of their arrangement, generally consistent with his trial testimony, in his initial statement given to police following his arrest but before his agreement to cooperate. Though it was perhaps imprudent for the Commonwealth to risk reversal by the presentation of hearsay evidence on an issue so attenuated from the question of the defendant's guilt, we conclude in the circumstances that the error was not prejudicial. See *Commonwealth* v. *Gonzalez*, 23 Mass. App. Ct. at 991.

3. *Other matters.* The defendant's remaining arguments may be disposed of with dispatch. The defendant directs his objection to the prosecutor's reference, in his closing, to New York

---

[4]The prior consistent statements were admitted in evidence in response to the defendant's attempt, during cross-examination of Rodriguez, to impeach Rodriguez's credibility by reference to his agreement to cooperate with the prosecution in exchange for favorable sentencing.

as the source of the drugs in this case. Based on Rodriguez's testimony, such a suggestion was a fair inference from the evidence. Moreover, for much the same reasons as discussed in the preceding section, the establishment of a "New York connection" was largely collateral to the question of the defendant's guilt. The suggestion that the evidence was sufficient merely to establish criminal liability as a principal and not as a joint venturer is without merit. See *Commonwealth* v. *Sanchez*, 40 Mass. App. Ct. 411, 418-419 (1996) (joint venture appropriate where participants act together toward a common end and where it is unnecessary "to decide who was a principal and who a helper — for each is guilty whether acting in one or the other role or successively in both"). Finally, no specific unanimity instruction was warranted since, on the evidence, there was but a single transaction for the sale of illegal drugs, beginning with the delivery of drugs by the defendant to Rodriguez and concluding with the consummation of the sale by Rodriguez to the undercover officer. See *Commonwealth* v. *Thatch*, 39 Mass. App. Ct. 904, 905 (1995); *Commonwealth* v. *Zane Z.*, 51 Mass. App. Ct. 135, 138-139 (2001).

*Judgment affirmed.*

*Order denying motion
for new trial affirmed.*