Wayne Rogers appeals from his conviction of possession of a class B substance with intent to distribute. See G. L. c. 94C, § 32A(a ).[2] On appeal, he contends that: (1) a Commonwealth witness offered lay opinion as to constructive possession; (2) the Commonwealth's expert testified to negative profiling evidence; and (3) the prosecutor misstated the evidence in closing argument. We affirm.
Officer Kaplan testified that he focused his search on "the room that I was in, I believe, being Mr. Wayne Rogers'." Passing on whether the reference to the room constituted a lay opinion as to constructive possession by Rogers, any error did not create a substantial risk of a miscarriage of justice. The defendant had the keys to the apartment, and the officers found a utility bill and DTA card in Rogers's name in the room.[3] "Assuming that the statement[s were] improperly admitted in evidence, we nonetheless determine that, in light of the other abundant evidence that established the defendant's dominion and control over the bedroom area, there was no risk that justice miscarried." Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 100 (2010). The fact that his girl friend also lived in the room does not negate the evidence of the defendant's dominion and control, nor does the fact that the defendant argued that they were her drugs mean that the testimony, which was cumulative of other evidence in the case, created a substantial risk of a miscarriage of justice.
A closer question is presented by the Commonwealth's expert witness's use of negative profiling evidence. Sergeant John Dineen properly testified, in response to hypothetical questions, that various factors were "consistent with" the sale of "crack" cocaine. See Commonwealth v. Wilson, 441 Mass. 390, 400-401 (2004). However, when asked if certain factors were consistent with street level distribution, rather than mere possession, he answered, "If someone was a user, they would have-if you have-buy crack cocaine, you're going to smoke it, people smoke it immediately after they buy it. So one would have something, an instrument to ingest that crack cocaine with, that glass pipe I referred to. You always-if we stop someone buying crack cocaine, they would almost always have that crack pipe on them." In addition, the prosecutor relied on this evidence in his closing argument, stating, "[t]hink about something else Sergeant Dineen, the expert, told us.... Think about those characteristics of somebody who's a drug user, as opposed to a dealer, and think about that bedroom again. A user is disheveled and dirty. Does that bedroom look like someone who is disheveled and dirty or organized and (indiscernible), like a business person might be[?]"
The testimony constituted negative profiling evidence of the type disapproved of in Commonwealth v. Horne, 476 Mass. 222, 226-228 (2017), and cases cited. The prosecutor's repetition of the evidence (albeit in a somewhat convoluted context) compounded the error. Id. at 228. However, there was no substantial risk of a miscarriage of justice.[4] Id. at 225-226.
Unlike Horne, in which there was no evidence of drug paraphernalia consistent with drug distribution, here, the police officers recovered two digital scales and several cut-up plastic baggies. The presence of the scales and cut baggies also informed the expert's opinion, which in all other respects was confined to admissible statements.[5] The evidence of drug paraphernalia materially distinguishes this case from Horne, and leads us to conclude that the testimony did not create a substantial risk of a miscarriage of justice.
Judgment affirmed.

He was acquitted of unlawful possession of ammunition, G. L. c. 269, § 10(h ).

The defendant points to the prosecutor's argument that the defendant, himself, wrote his name on the mailbox, when, in fact, there was no evidence presented at trial as to who had written his name. The distinction is immaterial, as it is the fact of the name on the box that matters. The defendant also claims that it was error for the prosecutor to refer to the fact that the utility bills had been paid, since the bills and envelope were admitted solely for a nonhearsay purpose, that is, to show his connection to the residence. See Commonwealth v. Koney, 421 Mass. 295, 303 (1995) ; Commonwealth v. Cohen, 6 Mass. App. Ct. 653, 657 (1978) ; Commonwealth v. Gonzalez, 23 Mass. App. Ct. 990, 991 (1987) ; Commonwealth v. Ramirez, 55 Mass. App. Ct. 224, 227-228 (2002). While the reference to payment would have been better left unsaid, the gravamen of the evidence was that the defendant was receiving the bills at the apartment's address.

There was no objection to the testimony.

As he testified, the lack of a pipe, "coupled with the baggies and scale, those are indicators of someone that would be putting all that stuff together to sell it."